## UNITED STATES *v.* IRVINE ET AL.

No. 92–1546.   Argued December 6, 1993—Decided April 20, 1994

SOUTER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, KENNEDY, THOMAS, and GINSBURG, JJ., joined, and in which SCALIA, J., joined except as to Part III–A. SCALIA, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 242. BLACKMUN, J., took no part in the decision of the case.

*Kent L. Jones* argued the cause for the United States. With him on the briefs were *Solicitor General Days, Acting Assistant Attorney General Paup, Deputy Solicitor General Wallace, Jonathan S. Cohen,* and *Teresa E. McLaughlin.*

*Phillip H. Martin* argued the cause for respondents. With him on the briefs were *Mary J. Streitz, Carol A. Peterson,* and *Cole Oehler.**

JUSTICE SOUTER delivered the opinion of the Court.

In *Jewett* v. *Commissioner,* 455 U. S. 305 (1982), we construed the 1958 version of Treasury Regulation § 25.2511–1(c) to provide that the disclaimer of a remainder interest in a trust effects a taxable gift unless the disclaimant acts within a reasonable time after learning of the transfer that created the interest. This case presents the question whether the rule is the same, under current Treasury Regulation § 25.2511–1(c)(2) (Regulation), when the creation of the interest (but not the disclaimer) occurred before enactment of the federal gift tax provisions of the Revenue Act of 1932. We hold that it is.

I

In 1917, Lucius P. Ordway established an irrevocable *inter vivos* family trust, with his wife and their children as primary concurrent life income beneficiaries, to be succeeded by unmarried surviving spouses of the children and by grandchildren. The trust was to terminate upon the death of the last surviving primary income beneficiary, at which time the

---

*\*Burton G. Ross, Cynthia S. Rosenblatt,* and *Robert P. Reznick* filed a brief for John G. Ordway, Jr., et al. as *amici curiae* urging affirmance.

*Geoffrey J. O'Connor* filed a brief for the estate of Helen W. Halbach et al. as *amici curiae.*

corpus would be distributed to Mr. Ordway's surviving grandchildren and the issue of any grandchildren who had died before termination. When the trust terminated on June 27, 1979, the corpus was subject to division into 13 equal shares among 12 grandchildren living and the issue of one who had died. Prior to distribution, on August 23, 1979, one of the grandchildren, Sally Ordway Irvine, filed a disclaimer of five-sixteenths of her interest in the trust principal. Mrs. Irvine had learned of her contingent interest in the trust at least as early as 1931 when she reached the age of 21, and she had begun receiving a share of the annual trust income after her father's death in 1966. Her disclaimer was nonetheless effective under a Minnesota statute on the books at the time, which permitted the disclaimer of a future interest at any time within six months of the event finally identifying the disclaimant and causing her interest to become indefeasibly fixed.[1] As a result of her disclaimer, each of Mrs. Irvine's five children received one-sixteenth of her share of the distributed trust principal.

Mrs. Irvine reported the disclaimer in a federal gift tax return, but did not treat it as resulting in a taxable gift. The Commissioner of Internal Revenue determined on audit that the disclaimer indirectly transferred property by gift within the meaning of Internal Revenue Code of 1986 §§ 2501(a)(1)[2] and 2511(a),[3] and was not excepted from gift

---

[1] Minn. Stat. § 501.211, subd. 3 (1978), repealed by 1989 Minn. Laws, ch. 340, art. 1, § 77 (and replaced by Minn. Stat. § 501B.86, subd. 3 (1992) (changing the time permitted for disclaiming to nine months, effective January 1, 1990)).

[2] "A tax . . . is hereby imposed for each calendar year on the transfer of property by gift during such calendar year by any individual resident or nonresident." 26 U. S. C. § 2501(a)(1).

[3] "Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible . . . ." 26 U. S. C. § 2511(a).

tax under Treas. Reg. § 25.2511–1(c)[4] because it was not made "within a reasonable time after [Mrs. Irvine's] knowledge" of her grandfather's transfer creating her interest in the trust estate. Mrs. Irvine responded with an amended return treating the disclaimer as a taxable gift, on which she paid the resulting tax of $7,468,671, plus $2,086,627.51 in accrued interest on the deficiency.[5] She then claimed a refund of the tax and interest, which the Internal Revenue Service denied.

---

[4] The following is the relevant text of the 1958 regulation then in effect:

"The gift tax also applies to gifts indirectly made. Thus, all transactions whereby property or property rights or interests are gratuitously passed or conferred upon another, regardless of the means or device employed, constitute gifts subject to tax. See further § 25.2512–8. Where the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right to completely and unqualifiedly refuse to accept ownership of property transferred from a decedent (whether the transfer is effected by the decedent's will or by the law of descent and distribution of intestate property), a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer. The refusal must be unequivocable [sic] and effective under the local law. There can be no refusal of ownership of property after its acceptance. Where the local law does not permit such a refusal, any disposition by the beneficiary, heir, or next-of-kin whereby ownership is transferred gratuitously to another constitutes the making of a gift by the beneficiary, heir, or next-of-kin. In any case where a refusal is purported to relate to only a part of the property, the determination of whether or not there has been a complete and unqualified refusal to accept ownership will depend on all of the facts and circumstances in each particular case, taking into account the recognition and effectiveness of such a purported refusal under the local law. In the absence of facts to the contrary, if a person fails to refuse to accept a transfer to him of ownership of a decedent's property within a reasonable time after learning of the existence of the transfer, he will be presumed to have accepted the property. . . ." Treas. Reg. § 25.2511–1(c), 26 CFR § 25.2511–1(c) (1959).

[5] Mrs. Irvine was also assessed additional gift tax and penalties in connection with an unrelated gift made in 1980 because her amended gift tax return for the third quarter of 1979 reduced the amount of unified credit available to her in the following year. See 26 U. S. C. § 2505 (1988 ed. and Supp. IV). That assessment is not at issue here.

After Mrs. Irvine's death in 1987, respondents, representing her estate, filed this action for refund of the tax and interest in the United States District Court for the District of Minnesota. The Government continued to maintain that the partial disclaimer brought about a transfer subject to federal gift tax because Mrs. Irvine had not made it, as the Regulation requires, "within a reasonable time after knowledge of the [earlier] transfer" that created her interest in the trust estate. The Government relied on *Jewett* v. *Commissioner*, 455 U. S. 305 (1982), in which this Court held that the "transfer" referred to in Treas. Reg. § 25.2511–1(c), 26 CFR § 25.2511–1(c) (1959) (promulgated in 1958), knowledge of which starts the clock ticking, occurs at the creation of the interest being disclaimed, not when its extent is finally ascertained or it becomes possessory. *Jewett, supra*, at 311–312.

Respondents tried to distinguish *Jewett* as having dealt with a trust established in 1939, after the creation of the gift tax by the Revenue Act of 1932 (Act), whereas the Ordway trust had been created before the Act, in 1917. Respondents also argued that the "reasonable time" limitation did not apply because the pre-Act, 1917 transfer creating the trust was not a "taxable transfer" of an interest, absent which the Regulation was inapplicable.[6] On cross-motions

---

[6] The 1958 version of the Regulation was in force throughout the period from Mrs. Irvine's disclaimer to her unsuccessful claim for a refund. The parties agree, however, that the current (1986) version of the Regulation supersedes the earlier version and governs this case. See 26 U. S. C. § 7805(b) (Secretary of the Treasury "may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect"); *Automobile Club of Mich.* v. *Commissioner*, 353 U. S. 180, 184 (1957) (Treasury Regulations may be retroactively applied unless doing so constitutes an abuse of the Secretary's discretion).

The relevant regulation is now Treas. Reg. § 25.2511–1(c)(2), 26 CFR § 25.2511–1(c)(2) (1993), which provides in relevant part:

"In the case of taxable transfers creating an interest in the person disclaiming made before January 1, 1977, where the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right completely and unqualifiedly to refuse to accept ownership of prop-

for summary judgment, the District Court held that impos-
ing the gift tax on Mrs. Irvine's disclaimer would amount to
retroactive application of the gift tax in violation of the Act's
provision that "[t]he tax shall not apply to a transfer made
on or before the date of the enactment of this Act [June 6,
1932]." Revenue Act of 1932, ch. 209, § 501(b), 47 Stat. 245.
The District Court cited *Ordway* v. *United States*, 89–1
USTC ¶ 13,802 (1989), in which the United States District
Court for the Southern District of Florida had reached the
same conclusion, on virtually identical facts, in a case in-
volving a partial disclaimer by another beneficiary of the
Ordway trust.

A divided panel of the Court of Appeals for the Eighth
Circuit reversed. 936 F. 2d 343 (1991). It rejected the
view that the Regulation is inapplicable to a trust created
before enactment of the gift tax statute simply because the
Regulation reaches only "*'taxable transfers* creating an
interest in the person disclaiming made before January 1,
1977.'" *Id.*, at 347 (emphasis in original). The Court of
Appeals held that the transfer creating the trust was "tax-

---

erty transferred from a decedent (whether the transfer is effected by the
decedent's will or by the law of descent and distribution), a refusal to
accept ownership does not constitute the making of a gift if the refusal is
made within a reasonable time after knowledge of the existence of the
transfer. The refusal must be unequivocal and effective under the local
law. There can be no refusal of ownership of property after its accept-
ance. In the absence of the facts to the contrary, if a person fails to refuse
to accept the transfer to him of ownership of a decedent's property within
a reasonable time after learning of the existence of the transfer, he will
be presumed to have accepted the property. Where the local law does
not permit such a refusal, any disposition by the beneficiary, heir, or next-
of-kin whereby ownership is transferred gratuitously to another consti-
tutes the making of a gift by the beneficiary, heir, or next-of-kin. In any
case where a refusal is purported to relate to only a part of the property,
the determination of whether or not there has been a complete and unqual-
ified refusal to accept ownership will depend on all the facts and circum-
stances in each particular case, taking into account the recognition and
effectiveness of such a purported refusal under the local law."

able," relying on the provision of Treas. Reg. § 25.2518–2(c)(3) that "'a taxable transfer occurs when there is a completed gift for Federal gift tax purposes regardless of whether a gift tax is imposed on the completed gift.'" 936 F. 2d, at 347–348. The court adopted the reasoning of its sister court for the Eleventh Circuit in *Ordway* v. *United States*, 908 F. 2d 890 (1990), which held that a "taxable transfer" occurs within the meaning of the Regulation whenever there is "'any transaction in which an interest in property is gratuitously passed or conferred upon another,' even if that transaction was not subject to the gift tax." *Id.*, at 895 (citation omitted). Applying the Regulation, the Court of Appeals for the Eighth Circuit held that Mrs. Irvine's disclaimer was subject to gift tax because she did not make it within a reasonable time after she learned of her interest in the trust. Finally, the divided panel also upheld application of the Act against the claim of retroactivity, holding it to be irrelevant that the trust antedated the 1932 enactment of the Act, since the tax was being imposed on the transfer brought about by the 1979 disclaimer, not on the *inter vivos* transfer that created the trust in 1917. 936 F. 2d, at 346.

Respondents' suggestion for rehearing en banc was granted, however, and the panel opinion was vacated. Unlike the panel, the en banc court affirmed the District Court, holding the Regulation inapplicable because its terms expressly limit its scope to "taxable transfers . . . made before January 1, 1977." 981 F. 2d 991 (CA8 1992). The creation of the Ordway trust in 1917 was not a "taxable transfer," the court reasoned, because the federal gift tax provisions had yet to be enacted: "It is fundamental that for a transfer to be taxable there must be an applicable tax in existence when the transfer is made. No such federal tax existed on January 16, 1917, when . . . Mrs. Irvine's interest was created." *Id.*, at 994. Given the inapplicability of the Regulation and its "reasonable time" requirement for tax-free disclaimer, the majority held that state law governed the effect of a dis-

claimer for federal gift tax purposes. See *id.,* at 996 (citing *Hardenbergh* v. *Commissioner,* 198 F. 2d 63 (CA8), cert. denied, 344 U. S. 836 (1952)); 981 F. 2d, at 998 (concurring opinion). Because Mrs. Irvine's disclaimer was indisputably valid under Minnesota law, the court held that the federal gift tax did not apply. Finally, the majority rejected the panel's analysis of retroactive application, indicating that taxation of the transfer effected by the disclaimer would violate the Act's prohibition of retroactive gift taxation. *Id.,* at 994.

In a concurring opinion, *id.,* at 996–998, Judge Loken also concluded the Regulation was inapplicable, not because of its limitation to "taxable transfers," but because it is limited to interests in "property transferred from a decedent . . . by the decedent's will or by the law of descent and distribution," whereas the Ordway trust came from an *inter vivos* transfer. Judge Loken shared the majority view, however, that because the Regulation was inapplicable, the federal gift tax consequences of the disclaimer were a function of state law. The dissent took the position of the majority in the panel opinion, and of the Eleventh Circuit in *Ordway* v. *United States, supra.* See 981 F. 2d, at 998–1002.

The conflict prompted us to grant certiorari to determine whether a disclaimer made after enactment of the gift tax statute, of an interest created before enactment, is necessarily free of any consequent federal gift taxation. 508 U. S. 971 (1993). We hold that it is not, and reverse.

## II

The Internal Revenue Code of 1986 taxes "the transfer of property by gift," 26 U. S. C. § 2501(a)(1),[7] "whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible," § 2511(a).[8] We have repeatedly em-

---

[7] See n. 2, *supra.*

[8] See n. 3, *supra.*

phasized that this comprehensive language was chosen to embrace all gratuitous transfers, by whatever means, of property and property rights of significant value. See, *e. g.*, *Dickman* v. *Commissioner*, 465 U. S. 330, 333–335 (1984); *Jewett* v. *Commissioner*, 455 U. S., at 309–310; *Smith* v. *Shaughnessy*, 318 U. S. 176, 180 (1943). We held in *Jewett*, *supra*, at 310, that "the statutory language . . . unquestionably encompasses an indirect transfer, effected by means of a disclaimer, of a contingent future interest in a trust," the practical effect of such a transfer being "to reduce the expected size of [the taxpayer's] taxable estate and to confer a gratuitous benefit upon the natural objects of [her] bounty . . . ."

Treasury Reg. § 25.2511–1(c)(1)[9] restates the gift tax's broad scope by providing that the tax is payable on "any transaction in which an interest in property is gratuitously passed or conferred upon another, regardless of the means or device employed . . . ." The Regulation (subsection 1(c)(2)), on the other hand, affords an exception to the general rule of taxability, by providing that a disclaimer of property transferred by a decedent's will or the law of descent and distribution does not result in a gift if it is unequivocal and effective under local law, and made "within a reasonable time after knowledge of the existence of the transfer." As

---

[9] "The gift tax also applies to gifts indirectly made. Thus, any transaction in which an interest in property is gratuitously passed or conferred upon another, regardless of the means or device employed, constitutes a gift subject to tax. See further § 25.2512–8 relating to transfers for insufficient consideration. However, in the case of a taxable transfer creating an interest in the person disclaiming made after December 31, 1976, this paragraph (c)(1) shall not apply to the donee if, as a result of a qualified disclaimer by the donee, the property passes to a different donee. Nor shall it apply to a donor if, as a result of a qualified disclaimer by the donee, a completed transfer of an interest in property is not effected. See section 2518 and the corresponding regulations for rules relating to a qualified disclaimer." Treas. Reg. § 25.2511–1(c)(1), 26 CFR § 25.2511–1(c)(1) (1993).

already noted, the *Jewett* Court held that "the transfer" in the 1958 version of the Regulation refers to the creation of the interest being disclaimed, with the "reasonable time" therefore beginning to run upon knowledge of the creation of the trust. See *supra*, at 229.

## III

### A

On one point there cannot be any serious dispute, for it is clear that if the Regulation applies to Mrs. Irvine's disclaimer, her act resulted in taxable gifts. The knowledge and capacity to act, which are presupposed by the requirement that a tax-free disclaimer be made within a reasonable time of the disclaimant's knowledge of the transfer of the interest to her, were present in this instance at least as early as Mrs. Irvine's 21st birthday in 1931.[10] We need not decide whether a disclaimer good for gift tax purposes could be required to have been made before enactment of the gift tax, for Mrs. Irvine did not disclaim shortly after enactment of the Act, and the timeliness determination in this case would be the same whether the reasonable time was calculated from Mrs. Irvine's first knowledge of the interest (1931) or from the enactment of the federal gift tax statute (1932). Moreover, we understand the Government to have conceded that it would not have contested the timeliness of a disclaimer made within a reasonable time after the enactment of the Act. See Tr. of Oral Arg. 12.

The determination of the amount of "reasonable time" that remained after Mrs. Irvine learned of the interest and reached majority status must be based upon the gift tax's purpose to curb avoidance of the estate tax. We have al-

---

[10] Arguably, occasion and capacity occurred under applicable Minnesota law in 1928 when Mrs. Irvine became 18 years old, the age of majority for women at the time. 1866 Minn. Gen. Stat., ch. 59, §2; see *Vlasek* v. *Vlasek*, 204 Minn. 331, 331–332, 283 N. W. 489, 490 (1939).

ready observed, *supra*, at 233, that "the practical effect of [a disclaimer like this one is] to reduce the expected size of [the disclaimant's] taxable estate and to confer a gratuitous benefit upon the natural objects of [her] bounty . . . ." *Jewett*, 455 U. S., at 310. Accordingly, as the Court said in *Jewett*, " '[a]n important, if not the main, purpose of the gift tax was to prevent or compensate for avoidance of death taxes by taxing the gifts of property *inter vivos* which, but for the gifts, would be subject in its original or converted form to the tax laid upon transfers at death.' " *Ibid.* (quoting *Estate of Sanford* v. *Commissioner*, 308 U. S. 39, 44 (1939)). Hence the capacious language of Internal Revenue Code §§ 2501(a)(1) and 2511(a), which encompasses all gratuitous transfers of property and property rights of significant value. See *supra*, at 232–233.

"[T]he passage of time is crucial to the scheme of the gift tax." *Jewett, supra,* at 316, n. 17 (internal quotation marks and citation omitted). The opportunity to disclaim, and thereby to avoid gift as well as estate taxation, should not be so long as to provide a virtually unlimited opportunity to consider estate planning consequences. While a decision to disclaim even at the earliest opportunity may be made with appreciation of potential estate tax consequences, the passage of time puts the prospective disclaimant in a correspondingly superior position to determine whether her need to enjoy the property (and incur a tax for a subsequent gift of it or an increased estate tax if she retains it) outweighs the favorable estate and gift tax consequences of a disclaimer. Although there is no bright-line rule for timeliness in the absence of a statute or regulation providing one, Mrs. Irvine's delay for at least 47 years after the clock began running, until she reached age 68, could not possibly be thought reasonable. By the date of her disclaimer, Mrs. Irvine was in a position to make a fairly precise determination of the advantage to be gained by a transfer diminishing her estate

and its eventual taxation. If her decision were treated as timely, the requirement for a timely election would have no bite at all.

## B

Respondents would avoid this result on two alternative grounds. They argue first that by its own terms, the Regulation does not apply on the facts of this case, with the consequence that taxability under the Internal Revenue Code turns on the efficacy of the disclaimer under state law. Second, respondents argue that even if the disclaimer would result in an otherwise taxable transfer in the absence of the governing Regulation, the tax on transfer of an interest created by an instrument antedating the enactment of the gift tax statute would be barred by the statutory prohibition of retroactive application.

## 1

The question of the Regulation's applicability under its own terms need not be resolved here, for the result of its inapplicability would not be freedom from gift taxation on a theory of borrowed state law or on any other rationale. The arguments for inapplicability may therefore be shortly stated, each having been raised at one point or another in the prior litigation of this case.

The first argument turns on the Regulation's application to disclaimers of interests created by what it terms "taxable transfers," a phrase that on its face presupposes some source of taxability for the transfer. There was, however, no gift tax when the trust, including its remainder interests, was created in 1917, and the gift tax provisions of the Act did not render preenactment transfers taxable.[11] The language is, to say the least, troublesome to the Government's position that the Regulation applies. The Government responds to

---

[11] See Revenue Act of 1932, ch. 209, § 501(b), 47 Stat. 245 (nonretroactivity provision).

the trouble by citing Treas. Reg. § 25.2518–2(c)(3)[12] (adopted in 1986, as was the Regulation), which deals with the new regime (not applicable here) for disclaimers of interests created after December 31, 1976,[13] and defines "taxable transfer" for its purposes as covering transfers on which no tax is actually imposed (*e. g.*, because a gift is chargeable against the current lifetime exemption, 26 U. S. C. § 2503(b)). If this definition is thought to beg the question, the Government falls back to the argument that the predecessor regulation was not limited in application to interests derived from taxable transfers, and there was no intent in 1986 to narrow the scope covered by the 1958 version of the Regulation in any such way.

The second argument rests on the Regulation's provision that "the transfer" to which it applies is subject to a timely, tax-free disclaimer "whether the transfer is effected by the decedent's will or by the law of descent and distribution," but only "where the law governing the administration of the decedent's estate" gives the recipient of the transferred interest a right to refuse it.[14] As against these descriptions of the transfer's testamentary character, the text says nothing indicating that a taxable transfer from anyone other than a decedent may create an interest subject to a disclaimer free of gift tax. If the text is given its strict reading, then, it has no application to the interest in question here, which came into being not from a decedent's transfer by will or from application of the law of descent and distribution, but

---

[12] Treasury Reg. § 25.2518–2(c)(3), 26 CFR § 25.2518–2(c)(3) (1993), provides in relevant part: "With respect to inter vivos transfers, a taxable transfer occurs when there is a completed gift for Federal gift tax purposes regardless of whether a gift tax is imposed on the completed gift."

[13] Under the new regime, tax-free disclaimers of interests created by post-1976 transfers may generally be made within nine months after the disclaimant has learned of the interest and reached the age of 21. See 26 U. S. C. § 2518; Treas. Reg. §§ 25.2518–1, 25.2518–2, 26 CFR §§ 25.2518–1, 25.2518–2 (1993).

[14] See n. 6, *supra.*

from Mr. Ordway's transfer during his lifetime, creating an irrevocable *inter vivos* trust.[15]

2

Even assuming the soundness of one or both of these arguments that the Regulation is inapposite, however, the disclaimer would not escape federal gift taxation by reference to state law rules giving effect to the disclaimer as causing a transfer to the beneficiary next in line. Any such reasoning would run counter to our holding in *Jewett*. In rejecting the argument that the 1958 version of the Regulation was being applied retroactively to the taxpayer's disadvantage in that case, the *Jewett* Court repudiated the "assumption that [the taxpayer] had a 'right' to renounce the interest without tax consequences that was 'taken away' by the 1958 Regulation. [The taxpayer] never had such a right." *Jewett*, 455 U. S., at 317. Only then did the *Jewett* Court go on to determine that the disclaimer at issue did not fall within the exemption from the gift tax provided by the Regulation, and was consequently taxable. *Id.*, at 312–316. The Court followed the general and longstanding rule in federal tax cases that although state law creates legal interests and rights in property, federal law determines whether and to what extent those interests will be taxed. See, *e. g., Burnet* v. *Harmel*, 287 U. S. 103, 110 (1932); *Morgan* v. *Commissioner*, 309 U. S. 78, 80–81 (1940); *United States* v. *Mitchell*, 403 U. S. 190, 197 (1971). The Court put it this way in *United States* v. *Pelzer*, 312 U. S. 399, 402–403 (1941):

"[T]he revenue laws are to be construed in the light of their general purpose to establish a nationwide scheme of taxation uniform in its application. Hence their pro-

---

[15] In direct contrast, the disclaimed interest in *Jewett* was created by a testamentary trust, and the disclaimer therefore involved "property transferred from a decedent . . . by the decedent's will . . . ." Treas. Reg. § 25.2511–1(c)(2), 26 CFR § 25.2511–1(c)(2) (1993). See *Jewett* v. *Commissioner*, 455 U. S. 305, 306 (1982).

visions are not to be taken as subject to state control or limitation unless the language or necessary implication of the section involved makes its application dependent on state law."

Cases like *Jewett* and this one illustrate as well as any why it is that state property transfer rules do not translate into federal taxation rules. Under state property rules, an effective disclaimer of a testamentary gift[16] is generally treated as relating back to the moment of the original transfer of the interest being disclaimed, having the effect of canceling the transfer to the disclaimant *ab initio* and substituting a single transfer from the original donor to the beneficiary of the disclaimer. See, *e. g., Schoonover* v. *Osborne*, 193 Iowa 474, 478, 187 N. W. 20, 22 (1922); *Seifner* v. *Weller*, 171 S. W. 2d 617, 624 (Mo. 1943); *Albany Hosp.* v. *Hanson*, 214 N. Y. 435, 445, 108 N. E. 812, 815 (1915); *Burritt* v. *Silliman*, 13 N. Y. 93, 97–98 (1855); *Perkins* v. *Isley*, 224 N. C. 793, 798, 32 S. E. 2d 588, 591 (1945); see also 3 American Law of Property § 14.15 (A. Casner ed. 1952). Although a state-law right to disclaim with such consequences might be thought to follow from the common-law principle that a gift is a bilateral transaction, requiring not only a donor's intent to give, but also a donee's acceptance, see, *e. g., Wallace* v. *Moore*, 219 Ga. 137, 139, 132 S. E. 2d 37, 39 (1963); *Gottstein* v. *Hedges*, 210 Iowa 272, 275, 228 N. W. 93, 94 (1929); *Pirie* v. *Le Saulnier*, 161 Wis. 503, 507, 154 N. W. 993, 994 (1915); *Blanchard* v. *Sheldon*, 43 Vt. 512, 514 (1871), state-law tolerance for delay in disclaiming reflects a less theoretical concern. An impor-

---

[16] See *Brown* v. *Routzahn*, 63 F. 2d 914, 916 (CA6 1933); 3 American Law of Property § 14.15 (A. Casner ed. 1952). As to interests created by intestate succession, state laws generally refused to give effect to disclaimers; the traditional rule is that "title to the property of an intestate passes by force of the rules of law . . . and that those so entitled by law have no power to prevent the vesting of title in themselves." *Hardenbergh* v. *Commissioner*, 198 F. 2d 63, 66 (CA8), cert. denied, 344 U. S. 836 (1952) (citations omitted).

tant consequence of treating a disclaimer as an *ab initio* defeasance is that the disclaimant's creditors are barred from reaching the disclaimed property. See, *e. g., Gottstein* v. *Hedges, supra.* The *ab initio* disclaimer thus operates as a legal fiction obviating a more straightforward rule defeating the claims of a disclaimant's creditors in the property disclaimed.

The principles underlying the federal gift tax treatment of disclaimers look to different objects, however. As we have already stated, Congress enacted the gift tax as a supplement to the estate tax and a means of curbing estate tax avoidance. See *supra*, at 234–235. Since the reasons for defeating a disclaimant's creditors would furnish no reasons for defeating the gift tax as well, the *Jewett* Court was undoubtedly correct to hold that Congress had not meant to incorporate state-law fictions as touchstones of taxability when it enacted the Act. Absent such a legal fiction, the federal gift tax is not struck blind by a disclaimer. And as we have already stated, *supra*, at 233, without the exception afforded in the Regulation,[17] the gift tax statute provides a general rule of taxability for disclaimers such as Mrs. Irvine's.

## IV

Presumably to ward off any attack on the federal gift tax resting on the possibility that its retroactive application would violate due process, see *Untermyer* v. *Anderson*, 276 U. S. 440 (1928), § 501(b) of the Act provided that it would "not apply to a transfer made on or before the date of the enactment of this Act [June 6, 1932]." Revenue Act of 1932, ch. 209, § 501(b), 47 Stat. 245. The same provision has in substance been carried forward to this day.[18] Respondents argue that even if the Regulation applies, or taxation would

---

[17] Respondents challenge the Regulation's validity only insofar as it would allegedly sanction a retroactive application of gift tax. See *infra*, at 241.

[18] See 26 U. S. C. § 2502(b).

otherwise be authorized, taxation of the transfer following Mrs. Irvine's disclaimer would violate this limitation. The language that respondents use to frame this claim reveals the flaw in their position. Respondents argue that "[t]he government's interpretation of the 1986 Regulation to apply to interests created before enactment of the Act [*i. e.,* to result in taxability] would be a retroactive application of the Act clearly contrary to Congressional intent." Brief for Respondents 26. But § 501 merely prohibited application of the gift tax statute to transfers antedating the enactment of the Act; it did not prohibit taxation when interests created before the Act were transferred after enactment. Such postenactment transfers are all that happened on the occasion of Mrs. Irvine's disclaimer. The critical events, the transfers of fractional portions of Mrs. Irvine's remainder to her children, occurred after enactment of the gift tax, though the interests transferred were created before that date. To argue otherwise, that the transfer to be taxed antedated the Act, would be to cling to the legal fiction that the disclaimer related back to the moment in 1917 when Lucius P. Ordway established the trust. This fiction may be indulged under state law as a device to regulate creditors' rights, but the *Jewett* Court clearly held that Congress enacted no such fantasy.[19] In sum, the retroactivity argument is sufficiently answered by our statement in *United States* v. *Jacobs,* 306 U. S. 363, 367 (1939), that a tax "does not operate retroactively merely because some of the facts or conditions upon which its application depends came into being prior to the enactment of the tax."

---

[19] While respondents do not take the further step of arguing that § 502 should be read to embody the fiction because due process would otherwise be violated, they do argue that taxation here would violate due process because Mrs. Irvine would not have been allowed to make a tax-free disclaimer within a reasonable time after adoption of the Act. But those facts are not presented here, as Mrs. Irvine did not disclaim until 1979. See *supra,* at 235.

## V

The Commissioner's assessment of federal gift tax on Mrs. Irvine's 1979 disclaimer was authorized by the statute. The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE BLACKMUN took no part in the decision of this case.

JUSTICE SCALIA, concurring in part and concurring in the judgment.

I join the judgment of the Court, and its opinion except for Part III–A. It seems to me that the basis for the "reasonable time" limitation in the Regulation cannot be, as the Court says, *ante*, at 235, the need to deprive the beneficiary of "a virtually unlimited opportunity to consider estate planning consequences." Considering estate planning consequences (not a *malum in se*) is nowhere condemned by the tax laws, and I would see no basis for the Treasury Department's arbitrarily declaring a disclaimer to be a gift solely in order to deter such consideration. The Secretary undoubtedly has broad discretion to determine the meaning of the term "transfer" as it is used in the gift tax statute, and undoubtedly may indulge an antagonism to estate planning in choosing among permissible meanings. But "disclaimer after opportunity for estate tax planning" is simply not a permissible meaning.

The justification for the "reasonable time" limitation must, as always, be a textual one. It consists, in my view, of the fact that the failure to make a reasonably prompt disclaimer of a known bequest is an implicit acceptance. *Qui tacet, consentire videtur.* Thus, a later disclaimer, which causes the property to go to someone else by operation of law, is effectively a transfer to that someone else. (The implication from nondisclaimer is much weaker when the interest is a

contingent one, but *Jewett* v. *Commissioner,* 455 U. S. 305 (1982), resolved that issue—perhaps incorrectly.) While state disclaimer laws have chosen to override the reasonable implication of nondisclaimer, the Treasury Department regulations correctly (or at least permissibly) conclude that the federal gift tax does not.