United States Court of Appeals,

Fifth Circuit.

No. 96-60087.

JULIUS M. ISRAEL LODGE OF B'NAI B'RITH NO. 2113, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Oct. 25, 1996.

Appeal from the United States Tax Court.

Before WISDOM, SMITH and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The Julius M. Israel Lodge of B'nai B'rith No. 2113 (the "taxpayer"), a non-profit organization enjoying a tax exemption under 26 U.S.C. § 501(c)(8), appeals the Tax Court's decision that the taxpayer's Instant Bingo games do not qualify for the "bingo game" exception to the unrelated business taxable income provision of 26 U.S.C. § 511. Finding no error, we affirm.

From 1987 through 1989, the taxpayer conducted traditional bingo games ("Bingo") to raise funds for its charitable activities. In July 1987, it also began conducting Instant Bingo. Both Bingo and Instant Bingo[1] are authorized under the Texas Bingo Enabling Act, TEX.REV.CIV.STAT.ANN. art. 179d (West 1987), and both were conducted in full accordance with the Act. For each of the taxable years, the taxpayer filed a Return of Organization Exempt from Income Tax (Form 990) but did not file any Exempt Organization Business Income Tax Returns (Form 990T).

Upon audit, the Commissioner of Internal Revenue determined that the Instant Bingo activities generated unrelated business income subject to tax under § 511(a)(1). In the Commissioner's view, Instant Bingo, in contrast to regular Bingo, does not constitute "bingo games"

---

[1]The parties stipulated to the definition of Instant Bingo: a game of chance in which an individual places a wager by purchasing an Instant Bingo card that is preprinted with bingo card patterns and is covered with sealed pull tabs. To determine whether a prize is payable, the player pulls tabs from the front of the card and compares the preprinted patterns that have been revealed with those preprinted on the reverse. If the card is a winner, the player takes the card to a cashier or usher and collects his prize.

within the meaning of § 513(f), which excepts the sponsorship of certain bingo games from the definition of "unrelated trade or business." The taxpayer petitioned the Tax Court, which sustained the Commissioner's findings.

We review *de novo* the Tax Court's statutory construction of the § 513(f) bingo game exclusion from § 511(a)(1). Findings of fact are reviewed for clear error. *See McKnight v. Commissioner,* 7 F.3d 447, 450 (5th Cir.1993).

A.

The starting point for interpreting the meaning of § 513(f) is the plain language of the statute.[2] *See Louisiana Credit Union League v. United States,* 693 F.2d 525, 541 (5th Cir.1982). The words of the statute must be construed in their "ordinary, everyday" sense. *Crane v. Commissioner,* 331 U.S. 1, 6, 67 S.Ct. 1047, 1050, 91 L.Ed. 1301 (1947). The "default rule of statutory interpretation [is] that exclusions from income must be narrowly construed." *Commissioner v. Schleier,* --- U.S. ----, ----, 115 S.Ct. 2159, 2163, 132 L.Ed.2d 294 (1995) (citation omitted).

The statute provides,

(f) Certain bingo games.—

    (1) In general.—The term "unrelated trade or business" does not include any trade or business which consists of conducting bingo games.

    (2) Bingo game defined.—For purposes of paragraph (1), the term "bingo game" means any game of bingo—

        (A) of a type in which usually—

        (i) the wagers are placed,

        (ii) the winners are determined, and

        (iii) the distribution of prizes or other property is made,

---

[2] As a threshold matter, we dismiss the taxpayer's contention that we must look to Texas state law in determining whether Instant Bingo is exempt from federal taxation under the federal tax code. The taxpayer is correct that *United States v. Irvine,* 511 U.S. 242, ----, 114 S.Ct. 1473, 1481, 128 L.Ed.2d 168 (1994), permits us to review federal tax provisions under state law or limitations where "the language or necessary implication of the section involved makes its application dependent on state law" (quoting *United States v. Pelzer,* 312 U.S. 399, 402-03, 61 S.Ct. 659, 661, 85 L.Ed. 913 (1941)), but such is not the case here. That § 513(f) expressly directs us to consult state law under paragraph (C) (and arguably under paragraph (B)) does not require us to look to Texas law under paragraph (A).

in the presence of all persons placing wagers in such game,

    (B) the conducting of which is not an activity ordinarily carried out on a commercial basis, and

    (C) the conducting of which does not violate any State or local law.

26 U.S.C. § 513(f).

The taxpayer has focused much of its attention on the subsection (2)(A) limiting definitions of qualified bingo games, but we turn first to the predicate paragraph (2) definition of "any game of bingo."  The plain language of the code creates two predicates to determining whether any bingo game qualifies as the type of "bingo game" to which the paragraph (1) exclusion applies.  First, a "bingo game" must qualify under the definition of "any game of bingo" (paragraph (2)).  Only after we have determined that a "bingo game" is "any game of bingo" must we then look to the limiting factors upon such "game of bingo" outlined in subsection (2)(A)(i), (ii) and (iii).

On this basis, the taxpayer's Instant Bingo is not "any game of bingo."  In its ordinary, everyday sense, "any game of bingo" refers to a specific game of chance in which numbers corresponding to preprinted numbers on a card are called out by random selection, the participants place markers over the corresponding numbers on their cards, and the first person to form a preselected pattern on his card wins the game. *See, e.g.,* THE AMERICAN HERITAGE DICTIONARY 180 (2d College ed. 1985) (defining bingo as "a game of chance in which players place markers on a pattern of numbered squares according to numbers drawn and announced by a caller");  WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY (1963 ed.) (defining bingo as "a game like lotto played usually by many players all at once for prizes";  defining lotto as "a game of chance played with cards having numbered squares corresponding with numbered balls drawn at random and won by covering five such squares in a row").

The Commission's description of a bingo game is in accord:  "A bingo game is a game of chance played with cards that are generally printed with five rows of five squares each. *Participants place markers over randomly called numbers on the cards in an attempt to form a preselected*

*pattern.*" 26 C.F.R. § 1.513-5(d) (emphasis added).[3]

The taxpayer's Instant Bingo is devoid of the critical element of bingo that runs through these ordinary, everyday definitions—that players place markers over randomly called numbers in an attempt to form a preselected pattern. Instant Bingo involves only the player's purchase of a prepackaged card from a series of similarly situated cards, and winning cards are those in which the preprinted appearance of numbers on the front of the card—which appearance is determined by the player's removing pull-tabs from the card—matches the preprinted winning arrangements indicated on the reverse side of the card. *See* Bingo Tax Rules § 3.554(a)(3) (Tex. Comptroller of Pub. Accounts 1987).

Instant Bingo involves no random selection of numbers by a caller, nor does it require the player to participate in the game by covering the squares on his card that correspond to randomly drawn numbers. Rather, an Instant Bingo player's participation in the game is wholly independent of any other's and requires only that he remove a pull-tab to determine whether he has a winning card.

A bingo game by any other name is not a bingo game. As the Commissioner contends, Instant Bingo is, for all practical purposes, a lottery. Thus, we find that Instant Bingo does not comport with even the preliminary requirement under § 513(f) that it be "any game of bingo."

B.

Even if we assume *arguendo* that Instant Bingo satisfies the threshold definition for purposes of § 513(f), it fails to meet the secondary requirement of subsection (A)(ii)—that the winners be determined in the presence of all persons placing wagers in such games. Much of the argument in

---

[3]The taxpayer's contention that we are unable to look to the Treasury Regulation's definition of bingo game is unfounded. It is fundamental that Treasury Regulations must be sustained and may be relied upon unless they are unreasonable or plainly inconsistent with the statute. *See Cottage Sav. Ass'n v. Commissioner,* 499 U.S. 554, 560-61, 111 S.Ct. 1503, 1507-08, 113 L.Ed.2d 589 (1991); *Louisiana Credit Union League,* 693 F.2d at 530 n. 14. Where, as here, the regulation's definition of the term "bingo game" is consistent with both ordinary parlance and the plain meaning of the statute, we are within our province to consult it. We also note that a regulation has "particular force if it is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent." *National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979). This regulation, written only eighteen months after the statute's enactment, comports with these guidelines. *See Zemurray Found. v. United States,* 687 F.2d 97, 100 n. 6, 101 (5th Cir.1982).

the Tax Court and by the taxpayer in this appeal has centered on the scope of the phrase "in the presence of all persons placing wagers in such games." We need not reach that issue, however, as we find that the taxpayer's Instant Bingo fails to satisfy subsection (A)(ii) under any reasonable definition of the "in the presence" phrase.

This conclusion is compelled by the fact that the winners in the Instant Bingo games are determined at the time the deck of cards is manufactured, and thus the winners are already predetermined outside the presence of *any* persons placing wagers in such game. The winning of the game is completely independent of any other external events, such as the random calling of numbers in a traditional bingo game. Although one must wait until the actual bingo occasion to determine which player will select and purchase which specific card, the cards already have been vested with independent significance under Texas state law, much as they are in any other instant-win lottery game under any other name.

In contrast, in a traditional bingo game, the bingo cards that the player purchases are not predetermined as winners or losers, but rather are the conduit by which the winners may be determined in the presence of all others placing wagers in such game. The mechanism by which the winners are determined is the random draw of numbers, which drawing forms the part and parcel of the traditional bingo experience. It is only by playing the bingo game in the presence of all others, and by listening to the random calling of numbers corresponding to squares on the bingo card, that the player can transform what is otherwise a card with a series of numbers and letters into a valuable card with the winning combination. It is the very essence of the game of bingo that the random call of numbers—not a deck of cards containing pre-designated winners—determines the player's success in the presence of all other participants; indeed, the purpose of the traditional bingo game is to select a winner from among the participants. *See* H.R. REP. No. 1608, 95th Cong., 2d Sess. 4, *reprinted in* 1978 U.S.C.C.A.N. 3716, 3718.

## C.

The taxpayer raises a host of other policy objections to the Tax Court's findings. First, the taxpayer contends that the Tax Court's reading of "in the presence of all others placing wagers"

contravenes the Commission's reading of the phrase in connection with 26 U.S.C. § 4421(2)(A) (the wagering tax). We need not reach that issue, however, as we affirm the Tax Court's ultimate holding on grounds wholly independent of the definition of such phrase.

Second, the taxpayer argues that, because Texas law does not allow Instant Bingo to be played on a commercial basis, it gains no competitive advantage over others by withholding taxes on the proceeds of its Instant Bingo, and thus the Commissioner has no valid public policy reason to deny the exemption. We agree with the taxpayer that avoidance of unfair competition was one of the congressional objectives in enacting the tax on unrelated business income, *see Louisiana Credit Union League,* 693 F.2d at 539-40, but we have also recognized that the need to stem a substantial loss of revenue, among others, was among the objectives. *See id.* Similarly, we disagree that the Commissioner's distinction between traditional bingo and Instant Bingo is artificial; the distinction is as tenable as that between traditional bingo and any other instant-win lottery that is taxable as an unrelated business or trade.

Finally, the taxpayer asserts that if it is required to pay federal taxes on the proceeds of its Instant Bingo activities, it will be denied, under Texas law, a corresponding federal income tax deduction unless it can trace its charitable expenditures specifically to those proceeds, as distinct from its tax-exempt proceeds from traditional bingo. The taxpayer's statement of the law is entirely correct. But, under 26 U.S.C. § 6001, it is already required to keep the necessary books and records to allocate its income and expenses between taxable and tax-exempt activities. *See* 26 C.F.R. § 1.265-1. Thus, the taxpayer believes that the Commissioner's ruling places it "between a rock and a hard place." It can either pay federal income tax where little or none is due or employ professionals to negotiate with the Internal Revenue Service to increase the percentages of expenses attributable to Instant Bingo. While this may be unfortunate, it does not provide us any basis upon which to reverse the Tax Court.

AFFIRMED.