# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2465

_____

Thomas J. Walshire, Executor of    \*
the Estate of Edward M. Walshire;    \*
Everette R. Walshire, Executor of    \*
the Estate of Edward M. Walshire,    \*
   \*    Appeal from the United States
         Appellants,    \*    District Court for the
   \*    Northern District of Iowa.
      v.    \*
   \*
United States of America,    \*
   \*
        Appellee.    \*


_____

Submitted: December 12, 2001
Filed: May 1, 2002

_____

Before WOLLMAN,[1] Chief Judge, HANSEN, Circuit Judge, and BATTEY,[2] District
Judge.

_____

-------

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United
States Court of Appeals for the Eighth Circuit at the close of business on January 31,
2002. He has been succeeded by the author of this opinion.

[2]The Honorable Richard H. Battey, United States District Judge for the District
of South Dakota, sitting by designation.

HANSEN, Circuit Judge.

This case requires us to determine the validity of Treasury Regulation § 25.2518-3(b), which prevents the disclaimer of a remainder interest, while retaining a life estate, from being considered a qualified disclaimer under Internal Revenue Code § 2518, 26 U.S.C. § 2518. We hold that the regulation is valid and affirm the district court's[3] judgment upholding the estate tax assessment based on the regulation.

I.

Edward M. Walshire received a one-fourth interest in the residue of his brother's estate when his brother died testate. Walshire executed a disclaimer of the remainder interest in his share of the residue but reserved to himself the income and use of the property during his life. Walshire's children were the contingent beneficiaries under Walshire's brother's will, and they would have received any property that Walshire disclaimed from his brother's estate. The estate consisted of real estate, stocks, bonds, bank accounts, farm machinery, and personal items. (Plaintiffs' App. at 75-77.) Walshire's share of his brother's estate was distributed to him by checks made jointly payable to him and each of his children. The checks were used to purchase certificates of deposit (CDs), which were originally held solely in Walshire's name with his children named as "pay on death" beneficiaries of the various CDs. During Walshire's life, the CDs were changed and titled in the name of "Walshire or [one of his children]." Walshire received the income from the CDs during his life but did not otherwise use or invade the principal balance of the CDs.

When Edward Walshire died, his executors, Thomas J. Walshire and Everette R. Walshire (hereinafter collectively "the executors"), did not include the value of the

_____

[3]The Honorable Michael J. Melloy, then United States District Judge for the Northern District of Iowa, now United States Circuit Judge for the Eighth Circuit.

2

CDs on Walshire's federal estate tax return because he had disclaimed the remainder interest in the property from which the CDs originated. The IRS determined that the disclaimer was not a qualified disclaimer for estate tax purposes and assessed estate taxes and penalties of approximately $64,000 against the estate based on the value of the CDs excluded from the return. The district court affirmed the assessment on cross-motions for summary judgment. The executors concede that the regulations preclude the disclaimer attempted by Walshire, but argue that the regulation at issue, § 25.2518-3(b), is invalid because it is contrary to the clear and unambiguous language of § 2518 of the Internal Revenue Code.

## II.

As this appeal involves only the legal issue of whether the treasury regulation is valid, we review the district court's judgment de novo. See Nichols v. United States, 260 F.3d 637, 642 (6th Cir. 2001). Treasury "regulations command our respect, for Congress has delegated to the Secretary of the Treasury, not to th[e] [c]ourt[s], the task of administering the tax laws of the Nation." Comm'r v. Portland Cement Co. of Utah, 450 U.S. 156, 169 (1981) (internal quotations omitted). See also I.R.C. § 7805(a) (authorizing the Secretary to prescribe all needed rules and regulations to enforce the Internal Revenue Code). "Treasury Regulations [are] valid if they 'implement the congressional mandate in some reasonable manner.'" Rowan Cos., Inc. v. United States, 452 U.S. 247, 252 (1981) (quoting United States v. Correll, 389 U.S. 299, 307 (1967)). A regulation reasonably implements the Congressional mandate if it "harmonizes with the plain language of the statute, its origin, and its purpose." Id. at 253 (internal quotations omitted). We may not invalidate a regulation merely because we would have implemented the statute differently; "'the choice among reasonable interpretations is for the [Secretary], not the courts.'" Miller v. United States, 65 F.3d 687, 689 (8th Cir. 1995) (quoting Nat'l Muffler Dealers Ass'n v. United States, 440 U.S. 472, 488 (1979)). We are mindful that the Secretary is bound by the plain language of the Internal Revenue Code, but

3

where the Code "'is silent or ambiguous with respect to the specific issue, the question for the court is whether the [regulation] is based on a permissible construction of the statute.'" Id. at 689-90 (quoting Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984)).

Section 2518 of the Internal Revenue Code allows the recipient of an interest in property to disclaim that interest, such that the interest is treated as having never been transferred to the disclaimant for gift or estate tax purposes. I.R.C. § 2518(a).[4] The purpose of the disclaimer statute is to avoid a second level of tax where the disclaimant effectively steps back and permits transfer of the property to the next person in line. For example, suppose A bequeaths his entire estate to B if B survives A, and to C if B does not survive A, and that B is alive when A dies. The property in A's estate is subject to estate tax when A dies. For whatever reason, B decides that he does not want the property and that C should receive the property from A's estate. Without the disclaimer statute, even if B allows the property to be transferred to C, the property in A's estate would again be taxed as a taxable gift from B to C. See I.R.C. § 2511(a) (including indirect transfers within the purview of the gift tax). Section 2518 treats the property as having never been transferred to B so that the property reaches C, as directed by A's will, with only one level of transfer tax.

To enjoy the benefits of § 2518, the disclaimant must make a "qualified disclaimer" under the statute. A qualified disclaimer is defined as "an irrevocable and unqualified refusal . . . to accept an interest in property," which must meet the following requirements: 1) the disclaimer must be in writing, 2) the disclaimer must be received by the transferor or his legal representative within 9 months of the transfer that created the interest, 3) the disclaimant cannot have accepted the interest or any of its benefits, and 4) the interest must pass without any direction on the part

---

[4]Section 2518, a gift tax statute, applies to testamentary transfers pursuant to § 2046.

of the disclaimant. I.R.C. § 2518(b). A transferee may disclaim an undivided portion of a transferred interest and avoid the second level of transfer tax for that portion of the interest as long as the disclaimer satisfies the requirements enumerated above. See I.R.C. § 2518(c)(1).

The disclaimer statute is included within subchapter B of the gift tax chapter of the Internal Revenue Code. See I.R.C. §§ 2501 et seq. Congress enacted the gift tax as broadly as possible "to embrace all gratuitous transfers, by whatever means, of property and property rights of significant value." United States v. Irvine, 511 U.S. 224, 233 (1994). "On several . . . occasions, [the Supreme] Court has acknowledged the expansive sweep of the gift tax provisions . . . [and] reinforce[d] the view that the gift tax should be applied broadly to effectuate the clear intent of Congress." Dickman v. Comm'r, 465 U.S. 330, 335 (1984). "[A]n important, if not the main, purpose of the gift tax was to prevent or compensate for avoidance of death taxes by taxing the gifts of property *inter vivos* which, but for the gifts, would be subject in its original or converted form to the tax laid upon transfers at death." Irvine, 511 U.S. at 235 (internal quotations omitted). By allowing a disclaimant to avoid the transfer tax for qualified disclaimers, Congress created an exception to this comprehensive transfer tax scheme. Because § 2518 provides "an exception from the normal tax requirements of the Internal Revenue Code," we construe its application narrowly to give effect to Congress's clear intent to tax all gratuitous transfers and to prevent taxpayers' attempts to avoid estate taxes. Ark. Best Corp. v. Comm'r, 485 U.S. 212, 220 (1988) (internal quotations omitted). We assess the validity of the regulation at issue in light of this background, the purpose of the statute, and its fit within the transfer tax regime. Rowan, 452 U.S. at 253.

Walshire attempted to disclaim a portion of the property he was entitled to receive from his brother by dividing it horizontally, that is, by disclaiming the remainder interest but retaining the right to the income and use of the property during his lifetime, or the life estate. The regulation at issue in this case requires that the

undivided portion "consist of a fraction or percentage of each and every substantial interest or right owned by the disclaimant in such property and must extend over the entire term of the disclaimant's interest in such property and in other property into which such property is converted." Treas. Reg. § 25.2518-3(b). In other words, the regulation requires a vertical division of the property. The regulation specifically excludes the disclaimer attempted by Walshire. See id. ("Thus, for example, a disclaimer made by the devisee of a fee simple interest in Blackacre is not a qualified disclaimer if the disclaimant disclaims a remainder interest in Blackacre but retains a life estate.")

The executors argue that the regulation is contrary to the plain language of § 2518(a), which allows the disclaimer of "any interest in property." The executors argue that a remainder interest is "any interest in property" as that phrase is used in § 2518(a) and that Walshire did not partition the remainder interest but disclaimed all of it, so that we need not even look at § 2518(c). This construction interprets subsection (a) in isolation. Congress specifically enacted subsection (c) as a limitation on subsection (a). See I.R.C. § 2518(c) ("For purposes of subsection (a) . . . ."). To allow the disclaimant to partition the interest bequeathed to him in any manner he chooses as "any interest in property" under § 2518(a) ignores the requirement in § 2518(c) that only an "undivided portion" of an interest may be disclaimed and violates a fundamental rule of statutory interpretation to give effect to all words and phrases used in the statute. See Herman v. Associated Elec. Co-op., Inc., 172 F.3d 1078, 1081 (8th Cir. 1999). We therefore must construe subsection (a) in light of subsection (c) since Walshire attempted to disclaim only a portion of what he was entitled to receive under his brother's will.

The executors argue that even under subsection (c), a remainder interest falls within the clear and unambiguous meaning of an "undivided portion of an interest." I.R.C. § 2518(c). The statute does not define "undivided portion of an interest" as that term is used in § 2518(c) and we find the term to be, at best, ambiguous. Because

6

"the statute is silent . . . with respect to the specific issue" of whether a horizontal division of property could be considered an undivided portion of an interest, we must determine "whether the agency's [regulation] is based on a permissible construction of the statute." Miller, 65 F.3d 690 (internal quotations omitted) (construing the failure to define a term as "an implicit legislative delegation of authority to the Commissioner to clarify" the undefined term).

The term "undivided" in its common usage means "not separated out into parts or shares." Webster's Third New International Dictionary 2492 (1986). We are most familiar with the concept of undivided interests in the context of a tenancy in common, which is "[a] tenancy by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the whole property." Black's Law Dictionary 1478 (17th ed. 1999). "'The central characteristic of a tenancy in common is simply that each tenant is deemed to own by himself, with most of the attributes of independent ownership, a physically undivided part of the entire parcel.'" Id. (quoting Thomas F. Bergin & Paul G. Haskell, Preface to Estates in Land and Future Interests 54 (2d ed. 1984)). From these uses of the term "undivided," we discern that an undivided portion of an interest is a portion that does not separate out the bundle of rights associated with the interest being apportioned. Thus, if a disclaimant is bequeathed a fee interest, as was Walshire, an undivided portion of that interest would have to include all of the rights associated with the fee. Apportioning a fee into a life estate and a remainder interest does not give the remainder interest all of the rights associated with a fee because the remainderman is not entitled to immediate possession, a fundamental right of a fee holder. A remainder interest simply is not an undivided portion of the fee. See Estate of Brock v. Comm'r, 630 F.2d 368, 369 n.1 (5th Cir. 1980) (addressing similar terminology under I.R.C. § 170(f)(3)(B), which allows a charitable deduction for a contribution of "an undivided portion of the decedent's entire interest in property," and noting that "it cannot be contended seriously that the church received an undivided interest in the property" where decedent left a life estate to his wife and a remainder interest to the church).

7

We do not believe it was unreasonable for the Secretary to determine that such a division does not meet the definition of an undivided portion when it promulgated the regulation that allows only vertical divisions of an interest, as opposed to horizontal divisions, to come within the purview of § 2518.

Our decision is bolstered by the fact that § 2518(c) requires more than merely separating the property into undivided portions; the disclaimer must satisfy the requirements delineated in subsection (b) before it is a qualified disclaimer. See I.R.C. § 2518(c) ("A disclaimer with respect to an undivided portion of an interest which meets the requirements of the preceding sentence [subsection (b)] shall be treated as a qualified disclaimer of such portion of the interest."). Section 2518(b) limits qualified disclaimers to those interests for which the disclaimant "has not accepted the interest or any of its benefits." I.R.C. § 2518(b)(3) (emphasis added).

The interest at issue here is a remainder interest. While Walshire did not accept the remainder interest[5] in his share of his brother's residuary estate, he did "reserv[e] only unto [him]self the use and income from said property as long as [he] shall live." (Disclaimer, Plaintiff's App. at 75.) Walshire's share of his brother's estate was ultimately converted into CDs. The executors argue that Walshire did not accept the remainder interest because he could not invade the principal of the CDs or direct to whom the principal of the CDs would go upon his death. (Appellants' Br. at 10.) Even if this were true, without the principal, there would have been no income during Walshire's lifetime. When Walshire accepted the income from the CDs, he clearly

---

[5]The way the CDs were titled suggests to us that Walshire did accept the remainder interest despite the purported disclaimer. The parties do not address whether the disclaimer became defective when Walshire retained the CDs in his own name with a "pay on death" provision to his children. Because this case reaches us on summary judgment, we take the facts in the light most favorable to the nonmovant, or the estate in this case, and presume for purposes of this appeal that Walshire did not accept the remainder interest despite the way the CDs were titled.

accepted a benefit of the remainder interest in the CDs. See United States v. Estate of Grace, 395 U.S. 316, 320 (1969) (characterizing transfers of a remainder interest while retaining a life estate as "transfers which leave the transferor a significant interest in or control over the property transferred[, i.e., the remainder interest,] during his lifetime"); Mahoney v. United States, 831 F.2d 641, 647 (6th Cir. 1987) (characterizing the retention of a life estate as a "scheme[] which do[es] not significantly alter lifetime beneficial enjoyment of property" (internal quotations omitted)), cert. denied, 486 U.S. 1054 (1988); Treas. Reg. § 25.2518-2(d)(1) ("Acts indicative of acceptance include using the property or the interest in property; accepting dividends, interest, or rents from the property; and directing others to act with respect to the property or interest in property."). The purpose of the disclaimer statute is to avoid a second transfer tax where the intended recipient steps back and allows the property to bypass him. By retaining the income from his share of his brother's estate, Walshire did not step back, but benefitted from the property during his lifetime. Given the limitations contained in § 2518(b)(3), and the fact that section 2518 is an exception to the broad coverage of the transfer tax scheme which we must read narrowly, Ark. Best Corp., 485 U.S. at 220, we cannot say that the regulation is inconsistent with or contrary to the language of the statute.

## III.

We hold that Treasury Regulation § 25.2518-3(b) is consistent with § 2518 of the Internal Revenue Code and is a valid construction of the statute. We therefore affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9