130 T.C. No. 1

UNITED STATES TAX COURT

ESTATE OF HELEN CHRISTIANSEN, DECEASED, CHRISTINE CHRISTIANSEN
HAMILTON, PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15190-05.                    Filed January 24, 2008.

        H was the only legatee of her mother's will.
H disclaimed the portion of the gross estate that had a
fair market value of more than $6,350,000.  The will
provided that any disclaimed portion would pass in part
to a charitable foundation and in part to a charitable
trust that would pay an annuity to the foundation.  H
did not disclaim a contingent remainder in the property
passing to the charitable trust.  On the estate's tax
return, it deducted as charitable contributions the
disclaimed property passing to the foundation and--to
the extent of the present value of the annuity interest
--the disclaimed property passing to the charitable
trust.  The parties stipulated to a value of the estate
higher than that originally reported on the return.

        <u>Held</u>:  No deduction is allowed for any of the
property passing to the trust because the partial
disclaimer of that property is not a qualified
disclaimer under sec. 2518, I.R.C.

Held, further:  The entire value of the property passing to the foundation--including the increased amount passing to the foundation because of the increased valuation of C's gross estate--is deductible because the disclaimer of that property is a qualified partial disclaimer under section 2518, and because no public policy bars increasing the amount of that deduction.

John W. Porter and J. Graham Kenney, for the estate.

Trent D. Usitalo, for respondent.

HOLMES, Judge:[1]  Helen Christiansen's will left everything to her only child, Christine Hamilton.  The will anticipated that Hamilton would disclaim a part of her inheritance, and directed that any disclaimed property would go in part to a charitable trust and in part to a charitable foundation that Christiansen had established.  The trust would last for 20 years, and pay an annuity of 7 percent of the corpus's net fair market value at the time of Christiansen's death to the foundation.  At the end of the 20 years, if Hamilton were still alive, the property left in the trust would go to her.

The parties settled the issue of the estate's value--increasing it substantially over what was reported on the estate's tax return.  There are two questions presented.  The first is whether the estate can claim a charitable deduction for

---

[1] The Chief Judge reassigned this case to Judge Holmes from Judge Kroupa.

the present value of that 7 percent annuity from the trust to the foundation. This depends on whether Hamilton's undisclaimed contingent-remainder interest in the trust requires disallowance of that deduction. The second question is whether the estate can claim an increased charitable deduction for the increased value of the disclaimed property passing directly to the foundation.

## FINDINGS OF FACT[2]

Helen Christiansen, a lifelong South Dakotan, led a long and remarkable life. She was one of the first women lawyers in her state and practiced there until the late 1950s, when she married and became a full-time farmer. She and her husband had one child, Christine Christiansen Hamilton. Hamilton remains, as she was when she filed the petition, a South Dakota resident. Her mother was domiciled in the state when she died.

The Christiansens each owned and operated their own farming and ranching businesses in central South Dakota for many years. When her husband died in 1986, Christiansen added his operations to her own. Christiansen's daughter, like her mother, became well educated, graduating from Smith College and then earning an MBA from the University of Arizona. And like her mother, she decided on a life back home in South Dakota. She married a

---

[2] The parties stipulated to most of the key facts and exhibits, and insofar as they are relevant to our analysis, we have adopted the trial Judge's findings of fact on the others.

professor at South Dakota State University, and began helping to run the family farm.

Both Christiansen and Hamilton were deeply involved in their community, and Hamilton to this day serves on the boards of many charitable organizations. She and her mother had also long wanted to use some of their wealth to benefit their home state. The family had already donated parkland to Kimball, South Dakota in 1998, but mother and daughter wanted some way to permanently fund projects in education and economic development. After meeting with a local law firm in the late 1990s, they decided to organize a charitable foundation as part of Christiansen's estate plan.

The Matson, Halverson, Christiansen Foundation and the Helen Christiansen Testamentary Charitable Lead Trust were at the center of this plan. Christiansen and Hamilton expected that part of Christiansen's estate would find its way to the Foundation, and part would find its way to the Trust. The Foundation would fund charitable causes at a rate they hoped would be about $15,000 annually--in the Foundation's application to the IRS for recognition of exempt status, Hamilton stated:

> The initial source of funding for the foundation will be $50,000 from the Helen Christiansen Estate providing a 5 percent income stream annually. Additionally, there will be annual funding from a 7 percent charitable lead annuity trust equaling $12,500.

The Trust[3] has a term of 20 years running from the date of Christiansen's death, and the Trust agreement provides for payments to the Foundation of 7 percent of the Trust's initial corpus. Any remaining assets in the Trust at the end of 20 years will go to Hamilton; if she dies before then, they will go to the Foundation. Hamilton and her husband, plus a family friend, are the Foundation's directors, and by early 2002, the Foundation was qualified as a charitable organization under section 501(c)(3).

Hamilton has contributed some of her own money to the Foundation and it has already begun its work, distributing a total of almost $22,000 through the end of 2004, including a donation for playground equipment to a local city park, and a grant to help buy food and supplies for the "Gathering and Healing of Nations," a series of bipartisan conferences sponsored

---

[3] The Trust is a "charitable lead annuity trust." A charitable trust is one whose beneficiaries are charities. Sec. 2522(a)(2). A charitable lead trust is a charitable trust whose income beneficiaries are charities, but whose remaindermen are not. Sec. 25.2702-1(c)(5), Gift Tax Regs. And a charitable lead annuity trust is a charitable lead trust whose charitable income beneficiary is guaranteed an annuity fixed as a percentage of the trust's initial assets and paid for a term of years. Sec. 26.2642-3(b), GST Tax Regs.; sec. 25.2522(c)-3(c)(2)(vi), Gift Tax Regs.

Unless otherwise noted, all section references are to the Internal Revenue Code and regulations, and Rule references are to the Tax Court Rules of Practice and Procedure.

by former Senator Tom Daschle and South Dakota State government that brings Indians and non-Indians together.

The problems that gave rise to this case can be traced to some particularly complex wrinkles that Christiansen agreed to as part of her estate planning. The first was to reorganize the Christiansen farming and ranching businesses--which for decades had been run as sole proprietorships--as two limited partnerships: MHC Land and Cattle, Ltd., and Christiansen Investments, Ltd. Christiansen kept a 99 percent limited-partnership interest in each, with the rest going to Hamilton Investments, L.L.C. Hamilton Investments also became the general partner of both MHC Land and Cattle and Christiansen Investments, and Christiansen's daughter and son-in-law became its members. Such family limited partnerships (or FLPs) are fairly common, though often challenged, estate-planning devices and the structure Christiansen chose is not new to this Court. See Estate of Strangi v. Commissioner, 115 T.C. 478, 484 (2000), revd. on other grounds 293 F.3d 279 (5th Cir. 2002).

In January 2000, Christiansen executed her last will and testament, which named Hamilton personal representative.[4] This is where the second wrinkle showed: Instead of simply dividing

---

[4] We note that Christiansen's estate planners therefore did not have the opportunity to review and take account of Walshire v. United States, 288 F.3d 342 (8th Cir. 2002), upholding the validity of the regulation that is key to this case.

her estate among Hamilton, the Foundation, and the Trust, Christiansen's lawyers wrote the will to pass everything (after payments of any debts and funeral expenses) to Hamilton. But the will also provided that if Hamilton disclaimed any part of the estate, 75 percent of the disclaimed portion would go to the Trust and 25 percent to the Foundation.

Christiansen died in April 2001, and her will was admitted to probate. Hamilton was named personal representative, and as planned, executed a partial disclaimer. The disclaimer's language is central to this case, and we reproduce the relevant portion here:

> A. <u>Partial Disclaimer of the Gift</u>:
> Intending to disclaim a fractional portion of the Gift, Christine Christiansen Hamilton hereby disclaims that portion of the Gift determined by reference to a fraction, the numerator of which is the fair market value of the Gift (before payment of debts, expenses and taxes) on April 17, 2001, less Six Million Three Hundred Fifty Thousand and No/100 Dollars ($<u>6,350,000.00</u>) and the denominator of which is the fair market value of the Gift (before payment of debts, expenses and taxes) on April 17, 2001 ("the Disclaimed Portion"). For purposes of this paragraph, the fair market value of the Gift (before payment of debts, expenses and taxes) on April 17, 2001, shall be the price at which the Gift (before payment of debts, expenses and taxes) would have changed hands on April 17, 2001, between a hypothetical willing buyer and a hypothetical willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts for purposes of Chapter 11 of the [Internal Revenue] Code, as

> such value is finally determined for federal estate tax purposes.

The $6,350,000 that Hamilton retained was an amount she and her advisers carefully determined would allow the family business to continue, as well as to provide for her and her own family's future.

But note especially the final phrase:  "as such value is finally determined for federal estate tax purposes."  And add to it another shield strapped on to the disclaimer--a "savings clause."  This clause said that to

> the extent that the disclaimer set forth above in this instrument is not effective to make it a qualified disclaimer, Christine Christiansen Hamilton hereby takes such actions to the extent necessary to make the disclaimer set forth above a qualified disclaimer within the meaning of section 2518 of the Code.

Consider how these insertions of uncertainty as to the amount actually being donated might come into play should the estate assign an unusually low value to the property being disclaimed. In such a scenario, Hamilton would take (and the estate tax would be paid on) her $6.35 million.  But the residue would be divided between the Foundation and the Trust.  Should it turn out that the estate underreported that value, Hamilton's failure to disclaim her remainder interest in the Trust would mean that she would capture much of the value of that underreporting as she herself approached retirement age in 20 years' time.  And if one

took an especially skeptical view of the situation, the final quoted phrase in the disclaimer and the savings clause meant that the Commissioner would face an interesting choice if he thought the estate was lowballing its own value--any success in increasing the value of the estate might only increase the charitable deduction that the estate would claim. Which would presumably reduce the incentive of the Commissioner to challenge the value that the estate claimed for itself.

And that, more or less, is the Commissioner's view of what was going on here.[5] As we noted, Christiansen owned 99 percent limited-partnership interests in both MHC Land and Cattle and Christiansen Investments when she died. She also owned $219,000 of real property, and over $700,000 in cash and other assets. The estate obtained appraisals of the limited-partnership interests, including a 35 percent discount for being a "minority interest," and reported on its estate-tax return that the 99 percent limited-partnership interest in MHC Land and Cattle had a fair market value of $4,182,750, and that the 99 percent limited-

---

[5] We do note that Hamilton and her husband had no children of their own--Christiansen's estate plan should not be viewed as a way to keep a great deal of property in the family with only a veneer of charitable intent. But the combination of the Trust, the Foundation, and the disclaimer embodied both charitable and estate-planning purposes. In this case, we analyze the legal consequences of those instruments, not the factual issue of the motivation behind them.

partnership interest in Christiansen Investments had a fair market value of $1,330,700.

The estate's tax return used these values to report a total gross estate value of slightly more than $6.5 million. When read in conjunction with the disclaimer's reservation to Hamilton of $6.35 million worth of property, this meant that only $40,555.80 would pass to the Foundation and $121,667.20 to the Trust. The estate deducted the entire amount passing to the Foundation, and the part passing to the Trust that was equal to the present value of 7 percent of $121,667.20 per annum for 20 years. The total came to about $140,000. It is important to note that the estate did not deduct the value of Hamilton's contingent-remainder interest in the Trust's corpus. See sec. 20.2055-2(b)(1), Estate Tax Regs.

The Commissioner determined that the fair market values of Christiansen's 99 percent FLP interests should be increased and that Hamilton's disclaimer did not "qualify"--a term we discuss later--to make any part of the estate's property passing to either the Trust or the Foundation generate a charitable deduction. The estate timely filed a petition, and trial was held in St. Paul, Minnesota.

The parties settled the valuation question before trial by stipulating that the fair market value of the Christiansen's interest in Christiansen Investments was $1,828,718.10, an

increase of more than 35 percent over its reported value. They

also agreed that her interest in MHC Land and Cattle was worth

$6,751,404.63, an increase of more than 60 percent over its

reported value. This means that the total value of the gross

estate was $9,578,895.93 instead of $6,512,223.20.

If the disclaimer were applied to this increased value,

property with a fair market value of $2,421,671.95 would pass to

the Trust and property with a fair market value of $807,223.98

would pass to the Foundation.[6] The estate asserts that this

increase in value entitles it to an increase in the charitable

deduction--both for the entire part passing to the Foundation

and also the increased value of the Trust's annuity interest.

The Commissioner concedes one point--he is now willing to

allow the estate the $40,555.80 reported on the return as going

to the Foundation. But he still objects to any deduction for the

property passing to the Trust, and now he contests any increase

in the deduction for the property passing to the Foundation.

OPINION

I.   The Disclaimer in Favor of the Trust

We begin with the basics. Under the Trust agreement, the

Foundation has the right to guaranteed annuity payments for the

---

[6] The lawyer hired to handle the estate's administration
testified at trial that he will file a petition with the probate
court after the resolution of this case. That petition will
describe what happened here, and only then will he ask the
probate court to approve distributions to the beneficiaries.

20-year term of the Trust and, if Hamilton survives that term, she has the right to any trust property then remaining. She thus has a contingent-remainder interest in the Trust's property.[7]

Hamilton did not disclaim this contingent remainder, which makes her disclaimer a "partial disclaimer." The Code and regulations' treatment of partial disclaimers is quite complex, so we begin our analysis with some background on estate-tax deductions, followed by a close reading of the regulation governing partial disclaimers, its exceptions, and the effect of the savings clause on Hamilton's disclaimer.

A.   Deductions and Disclaimers Under the Estate Tax

The Code taxes the transfer of the taxable estate of any decedent who is a U.S. citizen or resident. Sec. 2001(a). The taxable estate is the value of the decedent's gross estate less applicable deductions. Secs. 2031(a) and 2051. A deduction for bequests made to charitable organizations is one of the deductions allowed in calculating a decedent's taxable estate. Sec. 2055(a)(2). But Christiansen did not bequeath any of her

---

[7] We need not decide whether the burden of proof shifts to respondent under section 7491(a) because the case is mostly determined by applying the law to undisputed facts. Where there were disputed facts, both parties met their burden of production, and findings were based on a preponderance of the evidence. See Deskins v. Commissioner, 87 T.C. 305, 322-23 n.17 (1986); Payne v. Commissioner, T.C. Memo. 2003-90. Both parties "have satisfied their burden of production by offering some evidence, * * * [so] the party supported by the weight of the evidence will prevail." Blodgett v. Commissioner, 394 F.3d 1030, 1039 (8th Cir. 2005), affg. T.C. Memo. 2003-212.

property to the Foundation or the Trust or any other charity. Instead, she left it all to her daughter. And this created the first problem in this case, because charitable deductions are allowed for the value of property in a decedent's gross estate only if transferred to a charitable donee "by the decedent during his lifetime or by will." Sec. 20.2055-1(a), Estate Tax Regs. Courts have repeatedly declined to permit deductions where the amount given to charity turned upon the actions of a decedent's beneficiary or an estate's executor or administrator. See, e.g., Estate of Engelman v. Commissioner, 121 T.C. 54, 70-71 (2003). And it was Hamilton--not Christiansen--who might be regarded as transferring that property to the Foundation and Trust by executing the disclaimer.

This means that we must turn to section 2518, the Code's section that governs transfers by disclaimer. Section 2518 is important because a disclaimer that meets that section's test will cause the bequest to the disclaimant to be treated as if it had never been made. Sec. 2518(a). Without this provision, the Government might serve itself a second helping of tax by treating the disclaimed property as if it went from the estate to the disclaimant followed by a transfer from the disclaimant to another recipient, thus potentially piling gift tax onto estate tax. Walshire, 288 F.3d at 346.

B.    Partial Disclaimers

Hamilton's disclaimer is further complicated because it is a "partial disclaimer."  The Code recognizes and allows partial disclaimers.  Sec. 2518(c)(1); sec. 25.2518-3(a), Gift Tax Regs. But, whether partial or full, a disclaimer is a "qualified disclaimer"--meaning that the Code will treat the disclaimed property as if it had never gone to the disclaimant--only if it meets four requirements.  Sec. 2518(b).  It must be in writing. Sec. 2518(b)(1).  It must (with some exceptions not relevant here) be received by the personal representative of the estate no later than nine months after the date of the transfer creating the disclaimant's interest.  Sec. 2518(b)(2).  It must not allow the disclaimant to accept the disclaimed property or any of its benefits.  Sec. 2518(b)(3).  And, finally, the disclaimed interest must pass "without any direction on the part of the person making the disclaimer and * * * to a person other than the person making the disclaimer."  Sec. 2518(b)(4).

It's the fourth requirement--and only part of the fourth requirement[8]--that the parties are fighting over here:  Did Hamilton's retention of the contingent-remainder interest in the

_____

[8] The requirement that the disclaimed property pass without any direction on the part of the disclaimant is met here because Christiansen directed in her will that, if Hamilton did disclaim any of the property left to her, the disclaimed portion would be split between the Trust and the Foundation in specified percentages.

Trust's property mean that the property being disclaimed was not going "to a person other than the person making the disclaimer?" The Commissioner argues that the disclaimed property did not pass (or, to be more precise, pass only) to a person other than Hamilton. See sec. 2518(b)(4); sec. 25.2518-2(e)(3), Gift Tax Regs.

The applicable regulation is section 25.2518-2(e)(3), Gift Tax Regs., and the key provision is this one:

> (3) Partial failure of disclaimer. If a disclaimer made by a person other than the surviving spouse is not effective to pass completely an interest in property to a person other than the disclaimant because--
>
> (i) The disclaimant also has a right to receive such property as an heir at law, residuary beneficiary, or by any other means; and
>
> (ii) The disclaimant does not effectively disclaim these rights, the disclaimer is not a qualified disclaimer with respect to the portion of the disclaimed property which the disclaimant has a right to receive * * *.

If the regulation stopped here, the estate would win-- everyone agrees that the partial disclaimer's carveout of a contingent remainder means that the estate can't deduct the value of that remainder interest. But the regulation doesn't stop there. Instead, it continues:

> If the portion of the disclaimed interest in property which the disclaimant has a right to receive is not severable property or an undivided portion of the property, then the

> disclaimer is not a qualified disclaimer with respect to any portion of the property. Thus, for example, *if a disclaimant who is not a surviving spouse receives a specific bequest of a fee simple interest in property and as a result of the disclaimer of the entire interest, the property passes to a trust in which the disclaimant has a remainder interest, then the disclaimer will not be a qualified disclaimer unless the remainder interest in the property is also disclaimed.*

It's the language we've italicized that seems to resolve this issue. Hamilton: (a) is not a surviving spouse, (b) received a specific bequest of a fee simple interest in her mother's property under the will, (c) as a result of the disclaimer that property passed to a trust in which Hamilton had a remainder interest, and (d) Hamilton did not disclaim that remainder interest.

The consequences of this "partial failure of disclaimer" are severe: not only does the estate not get a deduction for the value of the remainder interest that might go to Hamilton (which, we again note, it has never claimed), but it doesn't get a deduction for "any portion" of the property ending up in the Trust.[9] That's what the sentence immediately preceding the

---

[9] The property going directly to the Foundation under the disclaimer doesn't have this retained-interest problem, and so its value is entirely deductible as a disclaimer of an "undivided portion of an interest." Sec. 2518(c)(1); sec. 25.2518-3(b), Gift Tax Regs. (characterizing disclaimer of fractional interest of "each and every substantial interest or right owned by the disclaimant"). This is presumably why the Commissioner has

(continued...)

italicized language says: "If the portion of the disclaimed interest in property which the disclaimant has a right to receive is not severable property or an undivided portion of the property, then the disclaimer is not a qualified disclaimer with respect to *any portion of the property.*" (Emphasis again added.)

The estate thus has to counterattack by arguing that Hamilton's remainder interest is either "severable property" or "an undivided portion of the property." But what do these two terms mean?

C.    Severable Property and Undivided Portions

"Severable property" is a defined term. Section 25.2518-3(a)(1)(ii), Gift Tax Regs., states: "Severable property is property which can be divided into separate parts each of which, after severance, maintains a complete and independent existence. For example, a legatee of shares of corporate stock may accept some shares of the stock and make a qualified disclaimer of the remaining shares." This definition is a bit like the definition of a molecule--"the smallest particle of a substance that retains the properties of that substance."[10] Thus, a block of stock can

---

[9](...continued)
conceded that the estate's return position--taking a deduction for the full amount of the property passing to the Foundation--was right. The Commissioner now aims only at the much larger increase in that deduction triggered by the stipulated increase in the value of the gross estate. See infra pp. 22-29.

[10] Webster's New Collegiate Dictionary 741 (8th ed. 1974).

be disclaimed share by share, but not by a general severance of the right to receive dividends from a right to vote the shares from a right to exercise any preemptive rights. By this definition, Hamilton could disclaim a particular number of partnership units but not, as she did with those passing to the Trust, disclaim their present enjoyment but keep a remainder interest in all of them.[11]

"An undivided portion of the property" is likewise defined, in section 25.2518-3(b), Gift Tax Regs.:

> An undivided portion of a disclaimant's
> separate interest in property must consist of
> a fraction or percentage of each and every
> substantial interest or right owned by the
> disclaimant in such property and must extend
> over the entire term of the disclaimant's
> interest in such property and in other
> property into which such property is
> converted. A disclaimer of some specific
> rights while retaining other rights with
> respect to an interest in the property is not
> a qualified disclaimer of an undivided
> portion of the disclaimant's interest in
> property. Thus, for example, a disclaimer

---

[11] "Severability" is a concept that shows up as well in two sections of the regulations that govern transfers of remainder interests for the purpose of calculating the amount of charitable deductions for estate and gift taxes. These regulations, sec. 20.2055-2(a), Estate Tax Regs., and sec. 25.2522(c)-3, Gift Tax Regs., both talk about a remainder interest in property as severable if it is "ascertainable", which in context means "has an ascertainable value." The definition of "severability" that we have to apply is the one for "severable property," not "severable interest." That definition, sec. 25.2518-3(a)(1)(ii), Gift Tax Regs., looks to whether each piece of a property "maintains a complete and independent existence" after severance--not whether each piece is capable of being valued separately.

> made by the devisee of a fee simple interest
> in Blackacre is not a qualified disclaimer if
> the disclaimant disclaims a remainder
> interest in Blackacre but retains a life
> estate.

But for Hamilton's retaining a remainder interest and giving up present enjoyment instead of the reverse, the example describes this case.  The Court of Appeals for the Eighth Circuit explained the distinction by comparing it to horizontal and vertical slices.  Disclaiming a vertical slice--from meringue to crust--qualifies; disclaiming a horizontal slice--taking all the meringue, but leaving the crust--does not.  Walshire, 288 F.3d at 347.  The only difference that we can see between Walshire and this case is that Walshire disclaimed a remainder interest and kept the income, while Hamilton tried to do the reverse--but no matter how you slice it, the cases are indistinguishable.[12]  We are left with the conclusion that her disclaimer is "not a qualified disclaimer with respect to any portion of the property."  Sec. 25.2518-2(e)(3), Gift Tax Regs.

The dissent reaches a different result by focusing on a different sort of property--the annuity interest created under the Trust agreement--and asking whether it is severable property. We agree that section 20.2055-2(e)(2)(vi), Estate Tax Regs., allows the severance of a guaranteed annuity interest from a

---

[12] To be technically precise, Hamilton was giving up an annuity interest rather than an income interest, but the distinction makes no difference.

remainder interest, and would allow a deduction for (a transfer of) the value of the annuity interest that the Trust would pay to the Foundation. But the problem for the estate is that this section of the regulations applies only to interests passing from the decedent directly. See sec. 20.2055-2(e)(1), Estate Tax Regs. When the interest is created by operation of a disclaimer,[13] as it was in this case, section 20.2055-2(c)(1) of the estate tax regulations tells us to look to the disclaimer rules: "The amount of a * * * transfer for which a deduction is allowable under section 2055 includes an interest which falls into the bequest, devise or transfer as the result of * * * (i) A qualified disclaimer (see section 2518 and the corresponding regulations for rules relating to a qualified disclaimer)." Because Hamilton's disclaimer is not, under that regulation, a qualified disclaimer as to any portion of the property passing to the Trust, none of the property transferred to the Trust generates a charitable deduction.

---

[13] The dissent relies on examples 8 and 11 in section 25.2518-(3)(d), Gift Tax Regs., see infra pp. 47-48, as showing that a disclaimant may make a qualified disclaimer of income only, or of corpus only, and keep the rest. This is true--but only if the decedent herself carved out income or corpus interests in her will, not if the disclaimant is trying to do so through the disclaimer. As the regulation carefully notes, "in general, each interest in property that is *separately created by the transferor is treated as a separate interest*." Sec. 25.2518-3(a)(1), Gift Tax Regs. (emphasis added). In this case, Hamilton was bequeathed all her mother's property in fee simple and was, through the disclaimer, trying to carve it up in tax-advantaged ways by herself.

D.    Effect of the Savings Clause

That leaves the savings clause as the only obstacle to the Commissioner's prevailing.  That clause says that Hamilton--at the time she signed the disclaimer--"hereby takes such actions to the extent necessary to make the disclaimer set forth above a qualified disclaimer."  Hamilton argues that she intended to do whatever it took to qualify the transfer to the Trust for the charitable deduction--and if that means she has to disclaim her contingent-remainder interest, then this clause suffices to disclaim it.  This would be a paradox, since it was this same partial disclaimer excluding the contingent remainder from its scope that would, on her reading of the savings clause, end up including it after all.

The parties to-and-fro on whether this kind of clause violates public policy, but we don't think we have to decide this question at that level of generality.  The savings clause works in one of two ways.  If read as a promise that, once we enter decision in this case, Hamilton will *then* disclaim her contingent remainder in some more of the property that her mother left her, it fails as a qualified disclaimer under section 2518(b)(2) as one made more than nine months after her mother's death.  See sec. 25.2518-2(c)(3)(i), Gift Tax Regs.  If it's read as somehow meaning that Hamilton disclaimed the contingent remainder back when she signed the disclaimer, it fails for not identifying the

property being disclaimed and not doing so unqualifiedly, see sec. 2518(b), because its effect depends on our decision. Such contingent clauses--contingent because they depend for their effectiveness on a condition subsequent--are as ineffective as disclaimers as they are for revocable spousal interests, see Estate of Focardi v. Commissioner, T.C. Memo. 2006-56, and gift adjustment agreements, see Ward v. Commissioner, 87 T.C. 78, 110-11 (1986).

II.  The Disclaimer in Favor of the Foundation

In the notice of deficiency, the Commissioner had no problem with the possibility of an increased charitable deduction for property going directly to the Foundation:

> In the event that it is determined that the "partial disclaimer" * * * is a "qualified disclaimer" then the transfer reported as passing to the [Foundation] * * * is in an amount that cannot be ascertained with certainty at this time.  However, when the other issues are finally resolved, this calculation can be made and a deduction allowed for the proper amount.

Not content with denying the estate a deduction for any portion of the disclaimed property passing to the Trust, the Commissioner now challenges the increased charitable deduction that the estate seeks (because the parties have agreed on a much higher value of the gross estate) for the transfer of property to the Foundation directly.  This would have the remarkable effect of greatly increasing the estate tax due because more valuable

property is passing to a charity, even though Hamilton is keeping no interest at all in that property.

The Commissioner has two arguments: (1) that any increase in that amount was contingent on a condition subsequent; *i.e.,* the Commissioner's challenge to the value of the gross estate, and (2) that the disclaimer's adjustment phrase--that the fair market value of the disclaimed property will be "as such value is finally determined for federal estate tax purposes"--is void as contrary to public policy.

A.    The Contingency of the Amount Transferred to the Foundation

The Commissioner argues that the deductibility of a "testamentary charitable contribution hinges upon whether the amount that the charity will receive is ascertainable at the decedent's date of death."  And he can point to section 20.2055-2(b)(1), Estate Tax Regs., which states that if

> as of the date of a decedent's death, a
> transfer for charitable purposes is dependent
> upon the performance of some act or the
> happening of a precedent event in order that
> it might become effective, no deduction is
> allowable unless the possibility that the
> charitable transfer will not become effective
> is so remote as to be negligible.

The first problem with this argument is that the transfer of property to the Foundation was not a "testamentary charitable contribution"--it was the result of a disclaimer.  And disclaimers are in a special category, governed not by section

20.2055-2(b)(1), but by section 20.2055-2(c).  All disclaimers are by definition executed after a decedent's death, but under section 2518 the transfer that a qualified disclaimer triggers relates back to the date of death, and the interest disclaimed passes as if it had been a bequest in the decedent's will.  As we've already noted, see supra note 9, the disclaimer regulation characterizes the property going directly to the Foundation as a qualified disclaimer of an "undivided portion of an interest" because Hamilton didn't keep any remainder interest.  See sec. 2518(c)(1); sec. 25.2518-3(b), Gift Tax Regs.

The Commissioner argues, however, that the increased charitable deduction like the one the estate is claiming here-- for "such value [as has through settlement been] finally determined for federal estate tax purposes"--is contingent not just because it depended on a disclaimer, but because it occurred only because the IRS examined the estate's return and challenged the fair market value of its assets.  We disagree.  The regulation speaks of the contingency of "a transfer" of property passing to charity.  The transfer of property to the Foundation in this case is not contingent on any event that occurred after Christiansen's death (other than the execution of the disclaimer) --it remains 25 percent of the total estate in excess of $6,350,000.  That the estate and the IRS bickered about the value of the property being transferred doesn't mean the transfer

itself was contingent in the sense of dependent for its occurrence on a future event.  Resolution of a dispute about the fair market value of assets on the date Christiansen died depends only on a settlement or final adjudication of a dispute about the past, not the happening of some event in the future.  Our Court is routinely called upon to decide the fair market value of property donated to charity--for gift, income, or estate tax purposes.  And the result can be an increase, a decrease, or no change in the IRS's initial determination.[14]

B.    Public Policy Concerns

The Commissioner finally argues that the disclaimer's adjustment clause is void on public policy grounds because it would, at the margins, discourage the IRS from examining estate tax returns because any deficiency in estate tax would just end up being offset by an equivalent additional charitable deduction.

It is true that public policy considerations sometimes inform the construction of tax law as they do other areas of law. For example, section 178 of the Restatement (Second) of Contracts (1981) has a multifactor test for when a promise or a contractual

---

[14]   The estate also quite pointedly notes that the Government itself uses the contested phrase:  The charitable annuity trust regulations make an interest determinable even if the amount to be paid is expressed "in terms of a fraction or a percentage of the net fair market value, as finally determined for Federal estate tax purposes, of the residue of the estate on the appropriate valuation date."  Sec. 20.2055-2(e)(2)(vi)(a), Estate Tax Regs.; see also, e.g., sec. 26.2632-1(b)(2), (d)(1) GST Regs.; Rev. Proc. 64-19, 1964-1 C.B. (Part 1) 682.

term is unenforceable because of public policy considerations, and lists numerous illustrations in the comments ranging from illegality to unreasonable restraints on trade. Other casebook examples disallow deductions for fines, <u>Tank Truck Rentals, Inc. v. Commissioner</u>, 356 U.S. 30, 36 (1958), or bribes, <u>Rugel v. Commissioner</u>, 127 F.2d 393, 395 (8th Cir. 1942), affg. 1941 WL 9990 B.T.A. 1941. But <u>Commissioner v. Tellier</u>, 383 U.S. 687, 694 (1966), warns us of the narrowness of this aid in statutory construction--the public policy being frustrated must be shown by a governmental declaration, and the frustration that would be caused by allowing the contested deduction must be severe and immediate. Our caution has deep roots: "Public policy is a very unruly horse, and when once you get astride it you never know where it will carry you. It may lead you from the sound law. It is never argued at all, but when other points fail." E. Allan Farnsworth, Contracts, 326 (3d ed. 1999), citing Burrough, J., in <u>Richardson v. Mellish</u>, 130 Eng. Rep. 294, 303 (Ex. 1824).

The disclaimer in this case involves a fractional formula that increases the amount donated to charity should the value of the estate be increased. We are hard pressed to find any fundamental public policy against making gifts to charity--if anything the opposite is true. Public policy encourages gifts to charity, and Congress allows charitable deductions to encourage

charitable giving.  <u>United States v. Benedict</u>, 338 U.S. 692, 696-97 (1950).

The Commissioner nevertheless analogizes the contested phrase to the one analyzed in <u>Commissioner v. Procter</u>, 142 F.2d 824 (4th Cir. 1944).  In <u>Procter v. Commissioner</u>, a Memorandum Opinion of this Court dated July 6, 1943 (1943 WL 9169), the Fourth Circuit was faced with a trust indenture clause specifying that a gift would be deemed to revert to the donor if it were held subject to gift tax.  <u>Id.</u> at 827.  The court voided the clause as contrary to public policy, citing three reasons: (1) The provision would discourage collection of tax, (2) it would render the court's own decision moot by undoing the gift being analyzed, and (3) it would upset a final judgment.

This case is not <u>Procter</u>.  The contested phrase would not undo a transfer, but only reallocate the value of the property transferred among Hamilton, the Trust, and the Foundation.  If the fair market value of the estate assets is increased for tax purposes, then property must actually be reallocated among the three beneficiaries.  That would not make us opine on a moot issue, and wouldn't in any way upset the finality of our decision in this case.

We do recognize that the incentive to the IRS to audit returns affected by such disclaimer language will marginally decrease if we allow the increased deduction for property passing

to the Foundation.  Lurking behind the Commissioner's argument is the intimation that this will increase the probability that people in Hamilton's situation will lowball the value of an estate to cheat charities.  There's no doubt that this is possible.  But IRS estate-tax audits are far from the only policing mechanism in place.  Executors and administrators of estates are fiduciaries, and owe a duty to settle and distribute an estate according to the terms of the will or law of intestacy.  See, e.g., S.D. Codified Laws sec. 29A-3-703(a) (2004).  Directors of foundations--remember that Hamilton is one of the directors of the Foundation that her mother created--are also fiduciaries.  See S.D. Codified Laws sec. 55-9-8 (2004).  In South Dakota, as in most states, the state attorney general has authority to enforce these fiduciary duties using the common law doctrine of *parens patriae*.[15]  Her fellow directors or beneficiaries of the Foundation or Trust can presumably enforce their observance through tort law as well.[16]  And even the Commissioner himself has the power to go after fiduciaries who misappropriate charitable assets.  The IRS, as the agency charged with ruling on requests for charitable exemptions, can discipline

---

[15] George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees, sec. 411 (rev. 2d ed. 1991).

[16] See for example Zastrow v. Journal Communications, Inc., 718 N.W.2d 51, 63 (Wis. 2006), where the Supreme Court of Wisconsin held that a breach of the fiduciary duty of loyalty is always an intentional tort.

abuse by threatening to rescind an exemption.  The famed case of Hawaii's Bishop Estate shows how effectively the IRS can use the threat of the loss of exempt status to curb breaches of fiduciary duty.  See Brody, "A Taxing Time for the Bishop Estate:  What Is the I.R.S. Role in Charity Governance?", 21 U. Haw. L. Rev. 537 (1999).  The IRS also has the power to impose intermediate sanctions for breach of fiduciary duty or self-dealing.  See sec. 4958.

We therefore hold that allowing an increase in the charitable deduction to reflect the increase in the value of the estate's property going to the Foundation violates no public policy and should be allowed.

Decision will be entered under

Rule 155.


Reviewed by the Court.

COLVIN, COHEN, WELLS, FOLEY, VASQUEZ, THORNTON, MARVEL, HAINES, and GOEKE, JJ., agree with this majority opinion.

HALPERN, J., did not participate in the consideration of this opinion.

HAINES and GOEKE, JJ., concurring: We join in the majority opinion but write separately to elaborate on why Hamilton's remainder interest in the trust and the foundation's 20-year annuity are not severable property for purposes of qualifying the disclaimer with respect to the portion of the disclaimed property that will pass to the trust.

Because disclaimers result in gratuitous transfers of property, the gift tax generally applies to transfers resulting from disclaimers. See sec. 2511(a). Section 2518 provides an exception which allows a disclaimant to avoid the second transfer tax for a transfer of an interest in property resulting from a qualified disclaimer. Walshire v. United States, 288 F.3d 342, 349 (8th Cir. 2002). A disclaimer is not a qualified disclaimer if the disclaimant has accepted the interest or any of its benefits, sec. 2518(b)(3), or if the interest passes to the disclaimant and the disclaimant is not the surviving spouse of the decedent, sec. 2518(b)(4).

Although section 2518(b)(3) disqualifies a disclaimer if the disclaimant has accepted the interest or any of its benefits, section 2518(c) permits a putative transferee to make a qualified disclaimer of an undivided portion of an interest in property provided the disclaimer meets the requirements of section 2518(b); i.e., a disclaimer of an undivided interest will not be disqualified just because the disclaimant has retained the remaining undivided portion of the property. The transferee,

however, is not allowed "to partition the interest bequeathed to him in any manner he chooses" and make a qualified disclaimer of a part of the interest.  Walshire v. United States, supra at 347 (a disclaimer of an undivided portion of an interest in property "requires a vertical division of the property").  To do so would ignore the limitation in section 2518(c) that only an "undivided portion" of an interest may be disclaimed.  Id.  Section 25.2518-3(b), Gift Tax Regs., specifically disqualifies a disclaimer of a remainder interest by the transferee of a fee simple interest.

Section 2518 allows a transferee to make a qualified disclaimer only of all or an undivided portion of an interest in property, but it does not require all interests in property given to the transferee to be treated as one interest; e.g., if T devises Blackacre and Whiteacre to A, A may keep Whiteacre and make a qualified disclaimer of Blackacre.  Sec. 25.2518-2(e)(5), Example (10), Gift Tax Regs.

Section 25.2518-3, Gift Tax Regs., provides guidance in identifying separate interests in property for which qualified disclaimers may be made and allows a transferee of property to make a qualified disclaimer of all or an undivided portion of any separate interest in the property even if the disclaimant has another interest in the same property.  Section 25.2518-3(a)(1)(i) and (ii), Gift Tax Regs., recognizes that a transferor may transfer separate interests in the same property (separate

transferor-created interests) or an interest in severable property that comprises multiple property interests which may be severed (severable property interests).  Generally, each separate transferor-created interest and each severable property interest is treated as a separate property interest.  Id.

Section 25.2518-3(a)(1)(ii), Gift Tax Regs., defines severable property as "property which can be divided into separate parts each of which, after severance, maintains a complete and independent existence."  For example, if under A's will B is to receive "personal effects consisting of paintings, home furnishings, jewelry, and silver", B may make a qualified disclaimer of the paintings and retain the furnishings, jewelry, and silver.  Sec. 25.2518-3(d), Example (1), Gift Tax Regs. Section 25.2518-3(c), Gift Tax Regs., allows a disclaimer of a specific pecuniary amount to qualify under section 2518.  In effect the regulation treats a disclaimer of a specific pecuniary amount as a disclaimer of a severable property interest.

The distinction between qualified disclaimers of separate transferor-created interests and qualified disclaimers of severable property is subtle, as shown by the following examples. Assume T devised the income from a farm to A for life, then to B for life, with the remainder interest to A's estate.  A's life estate and remainder interest in the farm are separate transferor-created interests.  A could make a qualified

disclaimer of all or an undivided portion of either the income interest or the remainder. See sec. 25.2518-3(a)(1)(i), Gift Tax Regs. Although the life estate and the remainder are separate transferor-created interests, neither is severable property. Thus, A could not make a qualified disclaimer of the income from the property for a term of years. Sec. 25.2518-3(a)(ii), Gift Tax Regs.

By contrast, assume T devised a fee simple in the farm to A. Neither a life estate nor a remainder interest in the farm is a separate transferor-created interest, nor are they severable property interests. See sec. 25.2518-3(b), Gift Tax Regs. Thus, A could make a qualified disclaimer of all or an undivided portion of the farm but could not retain a life estate and make a qualified disclaimer of the remainder. See id.; see also Walshire v. United States, supra at 349.

If the farm consists of 500 acres of land and 500 head of cattle, the farm is severable property with respect to the land and the cattle; i.e., if the cattle are severed from the land, the existence of the cattle will be complete and independent of the land and the existence of the land will be complete and independent of the cattle. Thus, A could retain the land and make a qualified disclaimer of the cattle or retain the cattle and make a qualified disclaimer of the land. Further, the land and the cattle each may be divided into two or more parts, each

of which, after severance, would maintain a complete and independent existence.  Thus, A could make a qualified disclaimer of 300 identified acres of the 500 acres, see sec. 25.2518-3(d), Example (3), Gift Tax Regs., and a qualified disclaimer of 300 head of the cattle, see id. Example (1).

Christensen bequeathed to Hamilton a fee simple in the estate property, and Hamilton disclaimed a pecuniary amount of $3,228,904.98.  As a result of Hamilton's disclaimer, under the terms of Christensen's will, $2,421,671 (75 percent of the pecuniary amount) passes to the trust and $807,233.98 (25 percent of the pecuniary amount) passes to the foundation.  Under the terms of the trust, the foundation receives a 20-year annuity, valued at $1,987,515.  Both Hamilton and the foundation receive contingent remainders, the values of which total $434,156.

Hamilton's disclaimer is not effective to pass the entire disclaimed property to a person other than herself because she has the right to receive a contingent remainder of the trust by means of Christensen's will.  However, the foundation's interest in the disclaimed property and the trust's interest in the disclaimed property are separate undivided interests.  Hamilton retains no interest in the amount that passes outright to the foundation.  Therefore, Hamilton's disclaimer is a qualified disclaimer with respect to the $807,233.98 that passes outright to the foundation.

Hamilton did not disclaim her right to receive the remainder of the portion of the disclaimed property that passes to the trust. Consequently, the disclaimer is not a qualified disclaimer with respect to Hamilton's contingent remainder interest. See sec. 25.2518-2(e)(3), Gift Tax Regs.

Hamilton's contingent remainder is an interest in the $2,421,671 portion of the disclaimed property that passes to the trust. That contingent remainder is not an undivided portion of the disclaimed property that passes to the trust. Consequently, unless Hamilton's remainder interest is a severable property interest, her disclaimer is not a qualified disclaimer with respect to the entire interest passing to the trust. See id.

In order to be treated as severable property, the foundation's guaranteed annuity and Hamilton's remainder, after severance, must maintain "a complete and independent existence."[1] See sec. 25.2518-3(a)(1)(ii), Gift Tax Regs. In the dissenting portion of his opinion, Judge Swift posits that in assessing whether the interests have a separate and independent existence, one key factor is whether each interest, taken separately, has an ascertainable value. Judge Swift quotes the first sentence of section 20.2055-2(a), Estate Tax Regs., which provides:

---

[1]"[I]ndependent" is defined as: "not requiring or relying on something else (as for existence, operation, efficiency): not contingent: not conditioned". Webster's Third New International Dictionary 1148 (2002).

> If a trust is created or property is transferred for
> both a charitable and a private purpose, deduction may
> be taken of the value of the charitable beneficial
> interest only insofar as that interest is presently
> ascertainable, and hence severable from the
> noncharitable interest. * * *

Judge Swift concludes that because the foundation's annuity
interest is presently ascertainable, it is severable from
Hamilton's remainder interest for purposes of qualifying
Hamilton's disclaimer under section 2518.

Whether an interest has an ascertainable value is not the
proper standard to apply in determining whether that interest is
severable for purposes of making qualified disclaimers under
section 2518. Indeed, the present values of annuities, life
estates, terms of years, remainders, and reversionary interests
are all ascertainable for purposes of transfer taxes on the basis
of recognized valuation principles. See, e.g., sec. 20.2031-7,
Estate Tax Regs. The second sentence of section 20.2055-2(a),
Estate Tax Regs., following the sentence quoted by Judge Swift,
provides:

> Thus, in the case of decedents dying before January 1,
> 1970, if money or property is placed in trust to pay
> the income to an individual during his life, or for a
> term of years, and then to pay the principal to a
> charitable organization, the present value of the
> remainder is deductible. * * *

A remainder following a life estate or a term of years is
ascertainable and thus "severable" as the term is used in section
20.2055-2(a), Estate Tax Regs. However, a remainder following a

life estate or a term of years or an annuity is not severable as the term is used for purposes of determining whether a disclaimer is a qualified disclaimer under section 2518. Sec. 25.2518-3(d), Example (2), Gift Tax Regs.

In the dissenting portion of her opinion, Judge Kroupa argues that the foundation's annuity interest in the trust and Hamilton's remainder interest in the trust are independent because the foundation can do nothing to affect the contingent remainder and Hamilton can do nothing to affect the annuity. Control by the "holder" of the beneficial interest is not relevant; the holder of the income interest in a trust and the holder of the remainder interest in that trust generally cannot affect each other's interest; yet those interests are not severable.

Although it is possible for the trustee of a trust to affect either the income interest or the remainder through investment decisions, the trustee has a fiduciary duty to balance the interest of the income beneficiary with that of the remainderman in making investment decisions. During the life of the income beneficiary or the term of years, the distribution of the income (usually cash dividends and/or interest) to the income beneficiary does not diminish the value of the remainder interest. Similarly, the gain or loss that might accrue in the corpus is not affected by the income earned and distributed to

the income beneficiary.  Essentially, the income beneficiary gets the fruit during his life or term, and the remainderman gets the tree at the end of the life or term.

By contrast, where the present interest is a fixed annuity, the annuitant may receive only income, only corpus, or a combination of income and corpus, depending on the amount of income, if any, the trust investments have produced. Furthermore, that mixture may change in any given year.  The value of the annuity is computed on the assumption that the trust assets will produce income equal to an assumed interest rate. See sec. 20.2031-7(d)(2)(iv)(A), Estate Tax Regs.  The fixed annual payment may be greater than or less than the anticipated income.  In the event the investments produce less income than expected, the corpus of the trust may be depleted beyond the expectations of the parties, reducing the value of the remainder interest.  Conversely, in the event the investments produce more income than expected, the corpus of the trust may grow beyond the expectations of the parties, increasing the value of the remainder.

In this way, the remainder is entirely dependent on the annuity in that it is affected by the amounts distributed to the annuitant, and by the source of those distributions, either from income or corpus.  In contrast, a remainder interest is less dependent on an income interest as the payments to the income

beneficiary will never include corpus. Thus, an annuity interest and a remainder interest are more dependent on each other than an income interest and a remainder interest.

While the values of an annuity interest and a remainder interest may be ascertained, if separated they do not maintain a complete and independent existence in the way that 300 head of cattle are independent of the remaining 200. Therefore, the annuity interest and the remainder interest are not severable within the meaning of section 25.2518-3(a)(1)(ii), Gift Tax Regs.

Section 25.2518-2(e)(3), Gift Tax Regs., provides that if the portion of the disclaimed property which the disclaimant has a right to receive (Hamilton's remainder interest) is not severable property or an undivided portion of property, the disclaimer is not qualified with respect to any portion of the property (the $2,421,671 that passes to the trust). As explained above, Hamilton's remainder interest is not severable property or an undivided portion of property. Therefore, the disclaimer is not a qualified disclaimer with respect to the $2,421,671 passing to the trust.

COHEN, FOLEY, THORNTON, MARVEL, WHERRY, and HOLMES, JJ., agree with this concurring opinion.

SWIFT, <u>J.</u>, concurring in part and dissenting in part:

On the public policy argument, I agree with the majority opinion.

As to the technical disclaimer issue under section 2518 relating to the trust annuity, I believe the regulations, read carefully and properly, along with a number of IRS private letter rulings, would treat the disclaimer Hamilton made in favor of the trust annuity as a qualifying disclaimer.

Section 25.2518-2(e)(3), Gift Tax Regs., describes in the flush sentence and in subdivision (i) exactly the <u>partial</u> failure that is applicable to Hamilton's disclaimer, as follows:

§ 25.2518-2.  <u>Requirements for a qualified disclaimer</u>.--

\*     \*     \*     \*     \*     \*     \*

(e) <u>Passage without direction by the disclaimant of beneficial enjoyment of disclaimed interest</u>.--

\*     \*     \*     \*     \*     \*     \*

(3) <u>Partial failure of disclaimer</u>.  If a disclaimer made by a person other than the surviving spouse is not effective to pass completely an interest in property to a person other than the disclaimant because--

(i) The disclaimant also has a right to receive such property as an heir at law, residuary beneficiary, or by any other means; and

(ii) The disclaimant does not effectively disclaim these rights \* \* \*

Because Hamilton did not also disclaim her contingent remainder interest in the trust property (valued by petitioner and by respondent under respondent's annuity tables at $434,156[1]), under the above regulatory provision there occurred a partial failure of Hamilton's disclaimer.

The next clause in section 25.2518-2(e)(3), Gift Tax Regs., describes the effect that the partial failure of Hamilton's disclaimer has on the interest in the trust property, as follows:

> (3) <u>Partial failure of disclaimer</u>.--
>
>     *     *     *     *     *     *     *
>
> the disclaimer is not a qualified disclaimer <u>with respect to the portion of the disclaimed property which the disclaimant has a right to receive</u>. * * * [Emphasis added.]

The portion which Hamilton has a right to receive is only the contingent remainder interest and therefore, under the above clear and express language of the regulations, it is only that portion or interest that is to be treated as disqualified.

Only under the second sentence of the above subparagraph (3) could the trust annuity interest (which Hamilton does not have a right to receive) be tainted and also be treated as disqualified.

---

[1]For purposes of this side opinion, I disregard the relatively small value of the foundation's contingent remainder interest in the trust that stands behind Hamilton's contingent remainder interest therein should Hamilton die during the 20-year term of the trust.

The second sentence of section 25.2518-2(e)(3), Gift Tax Regs.,
provides as follows:

> (3) <u>Partial failure of disclaimer</u>.
>
>    *       *       *       *       *       *       *
>
> If the portion of the disclaimed interest in property
> which the disclaimant has a right to receive <u>is</u> <u>not</u>
> <u>severable</u> <u>property</u> or an undivided portion of the
> property, then the disclaimer is not a qualified
> disclaimer <u>with</u> <u>respect</u> <u>to</u> <u>any</u> <u>portion</u> <u>of</u> <u>the</u> <u>property</u>.
> * * * [Emphasis added.]

Thus, all of the $2,421,671 passing to the trust (i.e., not
only the $434,156 reflecting the agreed 18-percent value of the
retained contingent remainder but also the $1,987,515 reflecting
the agreed 82-percent value of the annuity) is to be treated as
disqualifed only if the disqualifed contingent remainder is not
severable from the annuity.

With regard to severability, section 25.2518-3(a)(1)(ii),
Gift Tax Regs., provides that to be treated as severable property
the separate interests must maintain "a complete and independent
existence."  I see no reason the fixed annuity and the remainder
before us could not and would not be treated as independent of
each other.

The severable nature of a fixed dollar, fixed term annuity
such as that involved herein and a remainder are well established
by the Commissioner's own regulations and ruling position.  See
section 20.2055-2(a), Estate Tax Regs., and section 25.2522(c)-

3(a), Gift Tax Regs., both of which expressly state with regard to remainder and other interests that the key to whether property interests are to be treated as severable interests is whether separate values for each property interest are presently ascertainable.[2]  See IRS private letter rulings Priv. Ltr. Rul. 2000-27-014 (Mar. 31, 2000), Priv. Ltr. Rul. 1999-27-010 (Apr. 6, 1999), Priv. Ltr. Rul. 96-35-018 (May 29, 1996), Priv. Ltr. Rul. 96-31-021 (May 3, 1996), each of which treats, in the case of charitable remainder trusts, the remainder as having an ascertainable value, as severable, and as deductible; and in the case of charitable lead trusts, the fixed annuity as having an ascertainable value, as severable, and as deductible. Accordingly, the $1,987,515 value of the trust annuity that Hamilton did disclaim is to be treated as severable from the $434,156 value of the contingent remainder interest not disclaimed.  Judge Kroupa's dissenting opinion persuasively explains this point further.

---

[2]For example, sec. 20.2055-2(a), Estate Tax Regs., provides as follows:

§ 20.2055-2.  Transfers not exclusively for charitable purposes.--(a) Remainders and similar interests.--If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest. * * *

For the reasons stated, I dissent as to part I of the majority opinion.

KROUPA, J., agrees with this concurring in part, dissenting in part opinion.

KROUPA, J., concurring in part and dissenting in part:

I do not dispute any of the findings of fact used by the majority in its analysis. As the trial Judge who was able to weigh the credibility of the witnesses, however, I found Christiansen and her daughter's charitable intent compelling. They both intended to use their wealth to benefit the people of South Dakota and improve the economic and social conditions there. Unfortunately, the majority gives lip service to these important charitable objectives in part I to deny the estate the benefit of a charitable contribution deduction because of the majority's flawed interpretation of the regulation. I would hold that the estate is entitled to deduct the amounts passing to the Trust to the extent of the annuity portion.

I do agree with the majority, however, that we should allow a deduction for the amounts passing directly to the Foundation and therefore concur with part II of the majority opinion.

## I. Analysis of the Regulation on Partial Disclaimers

Now to the several reasons I disagree with the majority's holding that the estate is not entitled to deduct the value of the disclaimed property that passed, at Christiansen's direction, to the Trust. We are dealing with the annuity portion of the Trust as the parties do not dispute, nor has the estate claimed, a deduction for the amount attributable to the contingent remainder.

A.     Overly Broad Interpretation

The majority disallows the disclaimer on the grounds that Christiansen's daughter retained a contingent remainder in the Trust.  The majority interprets the example in section 25.2518-2(e)(3), Gift Tax Regs., to mean that retaining any remainder in a trust that receives disclaimed property will always disqualify the disclaimer.  The majority relies upon the italicized sentence in the example in section 25.2518-2(e)(3), Gift Tax Regs., to conclude that this italicized sentence "seems to resolve this issue."[1]  See majority op. p. 16.  It seems to me that the majority ignores the other sentences in this section including the immediately preceding sentence that focuses on whether the property is severable.  The majority disregards any severable/nonseverable analysis to disqualify the disclaimer.  This interpretation is inconsistent with several other important provisions of the regulation.

First, had the drafters of this regulation intended to establish such a broad rule, the drafters would not have included the severable/nonseverable language immediately before the italicized sentence.  The sentence upon which the majority relies is simply an illustration to distinguish the consequences of

---

[1]The majority italicized this sentence in its reproduction of sec. 25.2518-2(e)(3), Gift Tax Regs.  The italics do not appear in the regulation itself.

severable property from those of nonseverable property. The remainder in the example must be viewed as nonseverable property to give effect to the rest of the regulation.[2] Indeed, the sentence in the regulation, immediately before the italicized sentence, provides:

> If the portion of the disclaimed interest in property which the disclaimant has a right to receive is <u>not severable property</u> or an undivided portion of the property, then the disclaimer is <u>not a qualified disclaimer</u> with respect to any portion of the property * * *

Sec. 25.2518-2(e)(3), Gift Tax Regs. (emphasis added). The majority's interpretation simply disqualifies the entire disclaimer if the disclaimant has a right to receive <u>any</u> disclaimed property, severable or not, in the form of a trust remainder.

The majority's interpretation is difficult to reconcile with some of the examples in section 25.2518-3(d), Gift Tax Regs. The examples turn on whether the property is severable or nonseverable. Sometimes the disclaimer is qualified (i.e., if the property is severable).[3] See sec. 25.2518-3(d), <u>Examples</u>

---

[2]The example in sec. 25.2518-2(e)(3), Gift Tax Regs., was not in the proposed regulations. 45 Fed. Reg. 48928 (July 22, 1980). The example was added in the final regulations, released 6 years later. There is no discussion of this example in the Treasury Decision accompanying the final regulations. T.D. 8095, 1986-2 C.B. 160.

[3]The Commissioner's ruling positions also support this premise. See, e.g., Tech. Adv. Mem. 96-10-005 (Nov. 9, 1995); Priv. Ltr. Rul. 98-52-034 (Sept. 29, 1998).

(8), (11), Gift Tax Regs. Sometimes the disclaimer is not qualified (i.e., if the property is nonseverable). See sec. 25.2518-3(d), Example (10), Gift Tax Regs. The majority interpretation does not account for the different results in these examples.

The majority relies on a decedent's creation of the interest in a will, not a trust, to differentiate Examples (8) and (11) of section 25.2518-3(d), Gift Tax Regs., from the italicized sentence. The distinction of whether the separate interest is created in a will or in a trust is irrelevant. We should not interpret the regulation to require the interest to be created in a will. The transferor, not the disclaimant, must create the separate interests, but it is of no moment how they were created. Sec. 25.2518-3(a)(1), Gift Tax Regs. Consistent with the regulation, Christiansen, the transferor, not her daughter, created the annuity and contingent remainder interests when Christiansen created the Trust. These interests are thus separate interests. Id. I would find that Christiansen, not her daughter, was the transferor. There is no requirement in the regulation that the interest be created in a will.

All Christiansen's daughter did was to disclaim a fractional portion of the property passing to her in the will. She did not create or carve out a particular interest for herself and

disclaim the rest. The majority's implication otherwise is wrong.

B.  Contingent Nature of Remainder

I am also not convinced that section 25.2518-2(e)(3), Gift Tax Regs., controls. That section turns on whether the disclaimant has the "right to receive" the disclaimed property. A remainder is merely one example of a right to receive the property. The contingent remainder that Christiansen's daughter retained, however, does not give her the unequivocal right to receive the property. She will receive the property only if she is alive at the end of the Trust's 20-year term. Under South Dakota law, a contingent remainder does not provide a fixed or certain right to future enjoyment of property and does not vest until a condition precedent has occurred. S.D. Codified Laws sec. 43-3-11 (2004); Rowett v. McFarland, 394 N.W.2d 298, 306 (S.D. 1986).

Where the disclaimant has an unequivocal right to receive the property, a disclaimer would allow the benefit of avoiding a second level of tax without the disclaimant really giving up anything. On the other hand, if the disclaimant has only a contingent remainder, it is uncertain whether the disclaimant will ever receive the property. We should not read the regulation to disqualify a disclaimer because of a vague or distant possibility the disclaimant could receive the property

sometime in the future. The regulation speaks in terms of a right to receive property, and the rights Christiansen's daughter has are uncertain at best.

## II. Severable Property

The majority hedges its bets after concluding that the italicized sentence in section 25.2518-2(e)(3), Gift Tax Regs., "seems to resolve this issue." The majority goes on to discuss whether the contingent remainder Christiansen's daughter retained is severable property or an undivided portion of property, reaching the perfunctory conclusion that the remainder is nonseverable. I respectfully disagree with this conclusion.

As previously stated, proper application of section 25.2518-2(e)(3), Gift Tax Regs., considers whether the disclaimed property that the disclaimant has the right to receive is severable. Severable property is property that can be divided into separate parts, each of which maintains a complete and independent existence after severance. Sec. 25.2518-3(a)(1)(ii), Gift Tax Regs.

The majority mischaracterizes the interests in concluding that they are nonseverable. Christiansen's daughter did not disclaim an income interest in the Trust. Instead, Christiansen's daughter effectively disclaimed an annuity interest. An annuity is a commonly purchased financial interest that gives its holder the right to a certain stream of payments

over a fixed period, not full present enjoyment of the whole property as might be found in, for example, a life estate.  See, e.g., Abeid v. Commissioner, 122 T.C. 404, 408-409 (2004) (describing differences in the definition of annuity between section 7520 and the U.S.-Israel income tax treaty).  To adopt the pastry analogy of the majority, an annuity interest is a separate cupcake.

The majority implies several times that Christiansen's daughter disclaimed an income interest, or present enjoyment, in the Trust and kept a remainder.  In reality, however, Christiansen's daughter did no such thing.  It was pursuant to Christiansen's will that any amount her daughter disclaimed would go 75 percent to the Trust and 25 percent to the Foundation.  If we accepted the majority's implication that Christiansen's daughter disclaimed a portion and retained a remainder, those facts here would fit squarely within Examples (8) and (11) of section 25.2518-3(d), Gift Tax Regs.  The disclaimer in each of these examples is qualified, as should be the disclaimer at issue here.

The majority's mischaracterization of the type of interest passing to the Foundation pursuant to the Trust as an income interest or present enjoyment rather than an annuity also leads to the majority's faulty reliance on Walshire v. United States, 288 F.3d 342 (8th Cir. 2002).  The majority says that Walshire is

indistinguishable.  See majority op. p. 19.  Not so.  There are many key differences.

The disclaimant in Walshire disclaimed a remainder interest in property but retained the right to the income and use of the property during his lifetime.  Walshire v. United States, supra at 347.  The disclaimant thus divided the property into parts that did not maintain a complete and independent existence and were therefore not severable property.  See sec. 25.2518-3(a)(1)(ii), Gift Tax Regs.  For example, if the disclaimant in Walshire had significantly used the property under the retained life estate, the corresponding value of the remainder might have been affected.[4]

The thoughtful analysis of the U.S. Court of Appeals for the Eighth Circuit in concluding that the disclaimer in Walshire was not qualified is markedly different from the majority's analysis here.  The majority errs to suggest that the distinction between an annuity interest and an income interest "makes no difference." See majority op. note 12.  The annuity and the contingent remainder in this case are truly complete and independent from one another and are therefore severable property.  See sec.

---

[4]The property in Walshire v. United States, 288 F.3d 342 (8th Cir. 2002), consisted of certificates of deposit (CDs).  Had the disclaimant, for example, pledged the CDs as security for a loan and then failed to satisfy his obligations under the loan, the CDs could have been cashed early, and the resulting penalty would have diminished the size of the principal left to the remainderman.

25.2518-3(a)(1)(ii), Gift Tax Regs. The Foundation, as the holder of the annuity, can do nothing to affect the contingent remainder. Similarly, Christiansen's daughter, as the holder of the contingent remainder, cannot do anything to affect the fixed 7 percent of the corpus to be paid annually under the annuity. The two separate parts are in no way dependent on one another, contrary to the majority's holding.

The majority also fails to consider another key distinction between Walshire and this case. The disclaimant in Walshire unilaterally created the interests, and the disclaimant retained the life estate that he had personally created in the property. Walshire v. United States, supra at 344-345. The disclaimant thus retained the life estate because of his decision to carve the property into separate interests, not because the property he disclaimed passed to a trust in which the disclaimant happened to hold an interest. On the other hand, Christiansen, not her daughter, created the separate interests in the Trust. See sec. 25.2518-3(a)(1), Gift Tax Regs. Christiansen's daughter did not create any property interest whatsoever. She merely disclaimed a fraction of the property passing to her under the will.[5]

---

[5]There is also a theoretical distinction between Walshire v. United States, supra, and this case. A disclaimer permits a beneficiary to step back and allow property to be passed to a third party without incurring another level of tax. The situation in Walshire, where the disclaimant disclaimed a remainder in property left to him but kept a life estate, is akin
(continued...)

The majority seems to imply that Christiansen's daughter should be treated as having constructively created and funded the Trust when she made her disclaimer.[6]  This is not the right approach.  To treat Christiansen's daughter as having created the Trust when she made the disclaimer would involve a series of convoluted steps, each of which either never occurred or violates

---

[5](...continued)
to a testamentary gift.  Such a testamentary gift ordinarily would be subject to estate tax.  To treat the disclaimer in Walshire as qualified would enable the avoidance of tax on this transfer.  Unlike Walshire, however, the situation here does not afford an opportunity to avoid tax.  The estate has never disputed its obligation to pay tax on the amount attributable to the contingent remainder held by Christiansen's daughter.  The estate seeks a deduction only for the fixed-value annuity to be used for charitable purposes.  This is not akin to a testamentary gift where tax would be avoided.  Moreover, in the event Christiansen's daughter does not outlive the term of the Trust, the corpus will also pass to the Foundation to be used for charitable purposes.  The estate is thus paying tax on the transfer of some property that ultimately may go to charity.

[6]The Trust was unfunded at the time of trial and would only be funded from the disclaimed funds.  The estate's counsel testified, however, that it is common estate planning practice not to distribute funds from the estate until matters have been resolved.

the main concepts of section 2518.[7]  I refuse to rely upon her disclaimer to invalidate her disclaimer.

III. Differing Treatments in Wills and Disclaimers

Finally, there is little dispute that the estate would have been allowed to deduct the present value of the annuity portion of the Trust if Christiansen had made the bequest to the Trust in her will.  The Trust would be treated as a charitable lead annuity trust, and the annuity interest would be a guaranteed annuity interest.  See sec. 20.2055-2(e)(1) and (2)(vi), Estate Tax Regs.  Guaranteed annuity interests are considered to be

---

[7]First, we would have to treat Christiansen's daughter as receiving the disclaimed property from her mother.  This in fact had not occurred as of the time of trial.  Moreover, under sec. 2518(a), Christiansen's daughter is treated as if the property had never been transferred to her.  Second, despite step one, we would then have to treat Christiansen's daughter as having disclaimed the property she never received.  Third, we would then have to treat Christiansen's daughter as having directed this property that she hypothetically disclaimed into a trust in order to fund it.  The funding of this trust had not yet occurred as of the time of trial.  Further, under sec. 2518(b)(4), a disclaimant cannot direct how the interest passes.  Finally, after hypothetical steps one through three above, that have not yet occurred or never will occur, we would then invalidate the disclaimer because the now-invalidated disclaimer funded the trust.

ascertainable and therefore severable and deductible.[8]  See sec. 20.2055-2(a), (e)(1) and (2)(vi), Estate Tax Regs.

I am not convinced that a different result is warranted merely because the estate plan funded the Trust through a disclaimer rather than directly in the will.  I acknowledge the slight textual distinction in the definitions of "severable property" under the Gift Tax Regs., and "severable interest" under the Estate Tax Regs.[9], but do not find that it dictates a different result.

The majority's conclusion is even more anomalous when considered in light of the general premise of disclaimers: a disclaimant should be able to step back and be treated as never having received the property.  See sec. 2518(a).  The majority's conclusion subverts gifts to charity simply because they were made as a result of disclaimers rather than directly in the will.

---

[8]The majority's statement in note 12 that the distinction between an annuity interest and an income interest "makes no difference" is especially troubling in light of the different treatments prescribed for these interests.  While a guaranteed annuity interest is treated as ascertainable, severable and deductible, an income interest is not a deductible interest under these rules.  See sec. 20.2055-2(e)(2), Estate Tax Regs.

[9]A remainder must be ascertainable to be considered severable under the estate tax regulations.  Sec. 20.2055-2(a), Estate Tax Regs.  As described supra part II, property must have a complete and independent existence to be severable under the Gift Tax Regulations we are considering.  Sec. 25.2518-3(a)(1)(ii), Gift Tax Regs.

IV.  Conclusion

Christiansen's daughter made a qualified disclaimer of the property passing to the Trust.  The contingent remainder she retained in the Trust was not a right to receive the property and also was severable from the annuity interest the Foundation held. The estate would have been entitled to deduct the amounts passing to the Trust to the extent of the annuity portion as well as the amounts passing to the Foundation.  For the foregoing reasons, I respectfully dissent as to part I of the majority opinion and concur in the result of part II.

SWIFT, J., agrees with this concurring in part, dissenting in part opinion.